THOMAS J. VANTASSEL *versus* GEÒRGE G. HATHAWAY, *Ex'r.*

Where the plaintiff, in consideration of $700, conveyed to the defendant's
testator a house worth $1800, to which the grantee added an L; and, fif-
teen months after said conveyance, the grantee gave to the plaintiff a cer-
tificate that he "will let" the plaintiff "have" said house "by his paying
him within $100 what it cost him;" and the grantee devised said house by
will to the defendant; and the defendant, subsequent to the death of the
testator, conveyed said house by his quitclaim deed to another; — *Held,*
that, in an action against the executor of said grantee, to recover damages
for not conveying said house in accordance with said certificate, the pre-
siding Judge properly ordered a nonsuit.

ON EXCEPTIONS from *Nisi Prius*, APPLETON, C. J., pre-
siding.

ASSUMPSIT on the following memorandum : —

"Bangor, Sept. 2, 1858. — This is to certify, that I will
let T. J. Vantassel have the house he built and formerly oc-
cupied, any time, by his paying me within $100 what it
cost me."          (Signed)          "J. Hathaway."

The writ was dated May 1, 1863.

It was admitted that the premises were conveyed by the
plaintiff to J. Hathaway, May 21, 1857, who thereupon took
possession of the same, and that said Hathaway died in
May, 1860.

The plaintiff introduced the foregoing paper; a copy of
the last will and testament of the defendant's testator, in
which the testator had devised the premises to the defendant
and appointed him executor; and a copy of a quitclaim
deed, dated Dec. 18, 1861, from the defendant, in his indi-
vidual capacity, to one Abby Hathaway, conveying the same
premises.

*Charles Jennings,* called by the plaintiff, testified — that
he knew the lot on which plaintiff built the house in ques-
tion; lot was 148 feet on Pond street, and 100 feet on Hay-
ward street; knew J. Hathaway in his lifetime; plaintiff
lived in the house; moved out and J. Hathaway moved in
and occupied the same until his death; worth $1800.   J.

Hathaway told witness he had let plaintiff have $700 and taken a deed of the premises, and would give plaintiff in $100, if he paid it back.

*David Boynton*, called by plaintiff, testified—he worked for plaintiff in finishing the house; well built; worth $1800 when plaintiff left it. Worked for Hathaway afterwards; put on L; house all finished.

*George W. Maxim*, called by plaintiff, testified—he had worked at building houses many years, helped finish house in question; worth $1800 to $2000.

On the foregoing testimony, the presiding Judge, on motion of defendant's counsel, ordered a nonsuit, to which the plaintiff excepted.

*Knowles*, for the plaintiff.

*Blake & Garnsey*, for the defendant.

APPLETON, C. J.—This is an action of assumpsit founded on the following memorandum.

"Bangor, Sept. 2, 1858.—This is to certify, that I will let T. J. Vantassel have the house he built and formerly occupied, any time, by his paying me within one hundred dollars what it cost me. "J. Hathaway."

It is obvious, that here is no mutuality. The plaintiff was under no obligation to take the house and pay for the same. The defendant, if ever so desirous of having the amount specified, could not enforce its collection. Nor does the case show that there was any consideration whatever for the alleged promise. Being without consideration, it could not be enforced. The case of *Bean* v. *Burbank*, 16 Maine, 458, is similar in all respects, and is directly in point against the maintenance of the action. To the same effect is that of *Burnet* v. *Bisco*, 4 Johns., 235.

The counsel for the plaintiff rely on *Atwood* v. *Cobb*, 16 Pick., 227. But, in that case, the contract was signed by *both* parties, and the plaintiff offered to show that he agreed to take the land in question. There was mutuality of con-

tract as well as consideration. Both these elements are wanting in the case at bar.              *Nonsuit confirmed.*

CUTTING, KENT, WALTON, BARROWS and DANFORTH, JJ., concurred.