## Thomas D. Hawley v. Jane D. Jelly.

*Negotiations for sale of lands: Delay.* When a vendor is negotiating with differ-
ent persons for the sale of property, and it is known by all that a few days
will decide on the establishment of a public improvement which will greatly
affect its value, time may become so material that any delay by a proposed
purchaser may justify the vendor in regarding the bargain as off.

*Specific performance: Bill dismissed.* Where a proposed purchaser of lands, after
being informed on Saturday, that the bargain was at an end and could only be
renewed on advanced terms, received an abstract and made no further commu-
nication or objection to the vendor, and she sold the premises to another
purchaser on Tuesday, not supposing herself in any way bound to the other
party, a bill for specific performance, by the disappointed party, was dismissed.

*Heard April 23 and 24. Decided April 30.*

Appeal in Chancery from Wayne Circuit.

*John G. Hawley* and *Charles A. Kent,* for complainant.

*D. B. & H. M. Duffield* and *G. V. N. Lothrop,* for defend-
ant.

CAMPBELL, J.

Complainant sues for the specific performance of a con-
tract which is alleged in the bill with considerable fulness,
not by its terms as claimed to have been made, but accord-
ing to what it is supposed was its legal intent. It is
alleged as a contract in writing, executed and delivered by
the said Jane D. Jelly to your orator, whereby she "con-
tracted and agreed to and with your orator, to grant, bargain,
sell, and convey to your orator the said premises and
appurtenances, and to make out a good title thereto, valid
sufficient in law, and to execute, acknowledge, and deliver
to your orator a good and sufficient deed of conveyance of
the said premises and appurtenances, for the sum of ten
thousand seven hundred dollars, to be paid by your orator
in manner following, to wit: four thousand seven hundred,
on the execution of said deed, and six thousand, in two

years from the date thereof, with interest at the rate of ten per cent. per annum; said last mentioned sum of six thousand dollars to be secured by mortgage on the said premises, to be executed to the said Jane D. Jelly by your orator." He then sets forth agreements in writing on his part to pay the first sum " on the execution of the said deed of conveyance, and on the making out of a title, valid and sufficient in law, by the said Jane D. Jelly to your orator," and to pay the balance " in two years from the date of the said deed of conveyance," with interest at ten per cent., and to execute such mortgage. This agreement, he avers, was made and accepted on the 21st of December, 1871, and he alleges that on the 23d of December he sent his agent, John G. Hawley, to defendant " to inquire into the title to the said premises," and that his agent saw her and told her he had come to inquire into the title " and to carry out the said contracts and agreements on the part of your orator." He then avers that she refused to carry out the contract, and said that complainant could not have the premises unless he would give eleven thousand dollars.

The contract relied upon under the evidence is deduced from three letters. The first letter, written and received December 20th, is an inquiry whether defendant still wished to sell the property, and, if so, asking her lowest price and terms.

The second letter is her answer, written December 21st, and, as she testifies, mailed between nine and ten that morning, which is in the following terms :

"Detroit, Dec. 21, 1871.
" Mr. T. D. Hawley :

"Sir—I received your note of the 20th; I will sell for ten thousand seven hundred dollars, four thousand seven hundred down, the remaining six thousand in two years, at ten per cent. There is two hundred and fifty-nine feet

and six inches on Jefferson avenue, running back on Van Dyke avenue eleven hundred feet and over. If sold immediately, I will take this and no less. I came near selling on Tuesday last, and presume the same party will make an effort to get the place yet. It wants two hundred of closing the bargain.

"Yours respectfully,

JANE D. JELLY."

The third, dated December 22d, and which she testifies she received on the morning of Saturday the 23d, was an acceptance of her offer and terms, and a statement of readiness to comply with the conditions.

On Saturday afternoon, about 3 o'clock, Mr. John G. Hawley, a brother and agent of complainant, called on Mrs. Jelly and requested an abstract. She said she had one, but that she would not let complainant have the property for the price named, that she had had a better offer, or could do better; but if he came up that afternoon or evening, she would sell to him for eleven thousand dollars, —that is, three hundred dollars more,—but would not promise to do so after that. He made no reply or claim of any kind, and on leaving, with the abstract which she gave him, told defendant he would inform complainant she wanted three hundred dollars more to close the bargain. This is all that occurred at that or any other time between any of the parties, and on the succeeding Tuesday, the day after Christmas, she made a bargain with other parties, for twelve thousand dollars, and the same day, whether earlier or later does not appear, this bill was filed.

It appears also, that this property is near the proposed city park, upon which there was to be a vote of the freemen of the city on Wednesday, December 27, and that parties were constantly applying for the purchase of the land in view of that project.

HAWLEY v. JELLY.

Mrs. Jelly swears distinctly that she did not understand she was making any agreement, or doing any thing more than making an offer which she would have been willing to close if complainant had come up on that day; and that she was not disposed to give any further time, because there were parties constantly applying to purchase, and she wanted liberty to sell, as the day approached for the park meeting.

Complainant testifies that he had formed an idea that she could not be depended on to carry out a verbal contract, and therefore took pains to have everything in writing. His account of his brother's report of the interview corresponds with defendant's. He says he gave his brother no directions, except to get the abstract, and find out how soon Mrs. Jelly would be ready to finish the matter up.

The case presented is one where the complainant's reliance is on a strict legal right, involving no peculiar equities. The defendant has acted on an honest belief that no contract existed, or was claimed to exist. No fraud is attributable to either party.

We should desire to consider very seriously whether the testimony shows any contract, if its legal existence in the first instance became material. But we do not propose to discuss that question.

The letter of Mrs. Jelly indicates distinctly that she expected an immediate and decided compliance with her terms, and a complete sale without any delay. The circumstances were such as to make time an essential element in the conduct of the parties. The letter shows she was negotiating with others and expected to renew the negotiations, and there were but three business days before the park meeting.

Complainant did not visit her personally at all, and did not attempt to have any conference with her through his

25 MICH.—13.

agent until late on Saturday afternoon, and did not authorize his agent then to close the arrangements, but proposed to take time for examining the title before he would go further. His language is, "I sent my brother John G. Hawley to Mrs. Jelly to get the abstract of title to this property, so that we could examine the title, and if the title was found all right, make arrangements as to when we should complete the bargain by making the deed and mortgage."

Although under ordinary circumstances such a delay might not be very unreasonable, there was much in the present case to make it so. The defendant's proposals indicated some knowledge of the title and no desire to make further examination. He aimed at getting an absolute offer, and gave an absolute acceptance. It is evident defendant would never have granted any delay, and under the circumstances it was not to be supposed she would deal with any one who had not satisfied himself about the title. By taking the time proposed to himself, complainant would have completely cut off all chances of' her selling to others before the park meeting, and if he then saw fit to decline purchasing might subject her to a litigation, to which she might prefer submission to some loss.

But, if complainant's agent had informed Mrs. Jelly that he claimed she was actually bound by contract, she might have acquiesced, or guided her conduct on the basis of such a claim. Not supposing she had bound herself, she positively declined recognizing complainant's right. On learning this, and that unless she heard from complainant that evening she would not even bind herself to sell at eleven thousand dollars, the complainant's claim should have been asserted on the spot, and, failing in this, he was bound, when he received the report of his brother, to have at once notified her of his asserted rights. His conduct

led her to continue unaware of his claims, and under all the surroundings, she had no reason to imagine she was not at liberty to do as she pleased.    She was within an hour's ride of complainant all the while, and there was no good reason why any delay should have occurred at all.

Assuming that there ever was a contract, the conduct of the complainant fully justified her in supposing none was claimed to be binding on her, and it would not be equitable now to enforce it.

The court below acted properly in dismissing the bill, and the decree must be affirmed, with costs.

CHRISTIANCY, CH. J., and COOLEY, J., concurred.

GRAVES, J., did not sit in this case.