62 50
86 97
62 50
94 164

62 50
103 581
103 583

62 50
111 199

62 50
126 475

62 50
128 148

## Orrin Wardell v. John C. Williams.

*An* agreement for sale of farm, which had been subdivided into lots —Signed by land-owner alone—Providing for a cash payment, and balance on or before four years from date of purchase-price mortgage to be given by vendee— With privilege of paying one thousand dollars or more at any time to apply on unpaid principal—In which case vendor was to release lots of equal value—The agreement also providing for valuation of lots by the parties, to be marked on plat—Is not a completed contract —But upon its face looks to future action and negotiation between the parties to determine such valuation—Such action is an essential part of the terms and conditions of sale and payment—Promise to do an act in the future—Sufficient consideration, without performance, for an engagement by the other party—Provided such promise will subject the promissor to a charge or obligation not otherwise incurred—The non-performance of which will subject him to an action for damages—Agreement to execute the mortgage hereinbefore referred to—Must be in writing to be valid— Or evidenced by some note or memorandum thereof signed by the proposed mortgagor—Verbal acceptance of written offer to exchange lands— Not enforceable, being required to be in writing under statute of frauds— Contract void under said statute is a mere nullity, and cannot be used for any purpose.

**1.** Defendant agreed in *writing* to sell to plaintiff his farm for $39,000, payable as follows: $12,000 in cash, and the balance on or before four years from the date of a mortgage to be given as security for such deferred payment, plaintiff to have the privilege of paying $1,000 or more at any time during the four years on account of the unpaid principal. The agreement further stated that the farm had been subdivided into lots; that the parties were to agree to the valuation of *each* lot, and defendant agreed, on the making of such optional payments, to release lots of equal value to such payments, such agreed valuations to be placed on the plat of said farm.

The time for accepting this *offer* of sale was limited to twenty days, prior to the expiration of which plaintiff *verbally* accepted the offer and requested defendant to prepare his deed. Defendant answered that the agent of an insurance company which held a mortgage on the land was then absent, and would not return until the following Tuesday, which would prevent his obtaining a discharge of the mortgage until that date; and it being suggested by plaintiff that the twenty days' option would expire before the date named, defendant said that would make no difference,—that he would carry out the contract even after sixty days.

Plaintiff made no tender of the *cash* payment, or of any deed or mortgage, executed or to be executed, and before the Tuesday arrived, and after the expiration of the twenty days, defendant sold the land to another party.

*Held*, in a suit brought to recover damages for the breach of the alleged contract for sale, that the offer did not constitute a completed contract, but upon its face looked to *future* action and negotiation between the parties to determine and agree upon the valuation to be placed upon the lots; and that *this* part of the offer was an essential part of the terms and conditions of sale and payment.

2. While it has been held that a mere promise to *do* an act in the future is a sufficient consideration, even without performance, for an engagement by the other party, the true principle underlying this doctrine is that the promise which forms the consideration will subject the party making it to a charge or obligation which he otherwise would not have incurred, and the non-performance of which will subject him to an action for damages.

3. An agreement to execute a mortgage upon real estate is an agreement concerning an interest in lands, which, to be valid, must be in writing, or evidenced by some note or memorandum thereof signed by the promissor.

4. Where one party signs a memorandum offering to exchange land which he owns for land owned by another party, such memorandum cannot be made a valid contract by the verbal acceptance and promise of the other party to make such exchange, such verbal promise not being enforceable, being required to be in writing by the statute of frauds.

5. A contract void under the statute of frauds is a mere *nullity*, and cannot be used for any purpose whatever.[1]

Error to Superior Court of Detroit.    (Chipman, J.) Argued April 23 and 27, 1886.    Decided June 24, 1886.

Assumpsit.    Defendant brings error.    Reversed.    The facts are stated in the opinion, and in head-note 1.

*Moore & Canfield*, for appellant :

The contract required by How. Stat. § 6181, must be clear, complete, certain, and definite in all essential and material parts : *Burtch v. Hogge*, Har. Ch. 31 ; *McMurtrie v. Ben-*

---

[1] See *Niles Water Works v. Mayor of Niles*, 59 Mich. 315; *Raub v. Smith*, 61 Id. 547.

*nette,* Id. 126; *Wilson v. Wilson,* 6 Mich. 16; *Ritson v. Dodge,* 33 Id. 463; *Brown v. Brown,* 47 Id. 378.

The statute requires that the contract, or some note or memorandum thereof, shall be in writing, and signed by the vendor. This presupposes that an *actual* contract has been made and agreed upon by the parties; but if the memorandum is of an *offer* only, that assumes that no *actual* contract has been agreed upon : *Warner v. Willington,* 3 Drewry, 531; Fry on Specific Perf. § 166 ; Wood on Frauds, 656.

The agreement must be *mutually* binding upon both parties, one which each may enforce against the other : Fry on Specific Perf. § 286; Wood on Frauds, 667, 668, 669 ; Addison on Contracts, § 18; Wharton on Contracts, §§ 2, 523; Bishop on Contracts, 428 ; Parsons on Contracts, 449.

For a review of these cases and many others, see *Wilkinson v. Heavenrich,* 58 Mich. 574.

As to want of mutuality and necessity of tender of performance, counsel cite following cases : *Bean v. Burbank,* 16 Me. 458; *Vantassel v. Hathaway,* 53 Id. 18; *Tucker v. Woods,* 12 Johns. 190 ; *Lester v. Jewett,* 12 Barbour, 502; *Krohn v. Bantz,* 68 Ind. 277 ; *Stiles v. McClellan,* 6 Col. 89; *Scott v. Bush,* 26 Mich. 418; *McDonald v. Bewick,* 51 Id. 79.

"An offer to sell for cash can never be accepted so as to create a legal obligation on the part of the owner to sell unless the acceptance be accompanied with a tender of the price. Until this is done the owner may withdraw his offer without rendering himself liable for a breach of contract :" *Maynard v. Tabor,* 53 Me. 512; *Wood v. Edwards,* 19 Johns. 212 ; Parsons on Contracts, 429 ; *Cooke v. Oxley,* 3 T. R. 653 ; *Humphries v. Carvalho,* 16 East, 45 ; *Routledge v. Grant,* 4 Bing. 653; *Head v. Diggon,* 3 M. & R. 97.

Even if the offer of September 6 was originally a valid contract, it was voided by the subsequent parol agreement to extend the time of performance, there being no testimony upon which the jury could properly find a mere *forbearance* on the part of Williams. The case falls within the following authorities : *Stowell v. Robinson,* 3 Bing. (N. C.) 928 ; *Stead v. Dawber,* 10 Ad. & El. 57 ; *Goss v. Nugent,* 5 B. & Adl. 58 ; *Sanderson v. Graves,* L. R. 10 Exch. 234.

The doctrine of *these* cases is fully approved by this Court in *Abell v. Munson,* 18 Mich. 312. See, also, *Blood v. Goodrich,* 9 Wend. 68 ; *Emerson v. Slater,* 22 How. 28 ; *Swain v. Seamens,* 9 Wall. 272–3 ; Brown on Statute of Frauds, §§ 411, 414, 415, 439 ; Wood on Frauds, 743 ; *Dana v. Han-*

*cock*, 30 Vt. 616; *Phelps v. Seely*, 22 Gratt. 573, 585; *Jones v. Booth*, 38 Ohio St. 405; *Falmouth v. Thomas*, 1 C. R. & Mee. 109; *Marshall v. Lynn*, 6 M. & W. 109.

The contract is void, not being executed in accordance with the provisions of How. Stat. § 5709, which requires such execution to be in the presence of two witnesses. The language is substantially the same as that used in How. Stat. § 5658, providing for the execution of deeds, under which it has been held that a deed executed without witnesses would be invalid: *Crane v. Reeder*, 21 Mich. 59; *French v. French*, 3 N. H. 234; *Courcier v. Graham*, 1 Ohio, 330; *Patterson v. Pease*, 5 Id. 190; *Merwin v. Camp*, 3 Conn. 35; *King v. Carpenter*, 37 Mich. 363.

*James T. Keena* and *John Atkinson* (*Isaac Marston*, of counsel), for plaintiff:

The acknowledgment is no part of the deed, and unnecessary to its validity or to pass title: *Livingston v. Jones*, Har. Ch. 165; *Brown v. McCormick*, 28 Mich. 219; *Price v. Haynes*, 37 Id. 489.

A deed without witnesses is good as between the parties, though not entitled to record: *King v. Carpenter*, 37 Mich. 369; *Price v. Haynes*, Id. 489.

The execution of the contract for the sale of land by the vendee is not required by How. Stat. § 6181, which has been so construed by this Court: *Holland v. Hoyt*, 14 Mich. 238; *Scott v. Bush*, 26 Id. 418; *Burke v. Wilber*, 42 Id. 328.

Under these authorities, the acceptance by parol within the time specified in the proposition was sufficient.

Under this contract, assuming it to be complete and enforceable, plaintiff was entitled not only to a good but a marketable title, and was not required to take the land burdened by the $8,000 mortgage: *Dwight v. Cutler*, 3 Mich. 566; *Allen v. Atkinson*, 21 Id. 351; *Allen v. Hazen*, 26 Id. 142; *Gault v. Van Zile*, 37 Id. 22.

CHAMPLIN, J. This suit was commenced to recover damages for breach of an alleged contract for the conveyance of certain real estate by defendant to plaintiff.

The defendant was the owner of a parcel of land containing about 116 acres, situated a short distance from the city of Detroit. He had platted the land into lots and streets, but no streets had been actually opened or lots sold, but the whole

thereof was occupied as a farm. He had been desirous of selling his property, and had, before the date hereinafter mentioned, placed it in the hands of a real-estate agent for sale, but without success.

On the sixth day of September, 1884, he signed and delivered to Orrin Wardell, of Detroit, a paper, of which the following is a copy:

"DETROIT, September 6, 1884.

"*Orrin Wardell, Esq.*—DEAR SIR: I will sell you my farm, containing 116 acres more or less, situate on Woodward avenue, about half mile north of first toll-gate, for the sum of $39,000, viz., $12,000 to be paid in cash, and the balance ($27,000) to be secured by a mortgage on said farm, payable on or before four years from the date of said mortgage, with interest at the rate of seven per cent. per annum, to be paid semi-annually; you to have the privilege of paying on account of said principal sum the sum of one thousand dollars or more at any time during said term of four years.

"Said farm having been subdivided into lots, we will agree to the valuation of each lot, and, on payment being made on account of said mortgage, I agree to release lots of equal value to amount paid, the valuation of each lot as agreed between us to be placed on plat. This offer to remain open for 20 days from date.

[Signed] "JOHN C. WILLIAMS."

Eight or ten days later he furnished to Wardell an abstract of title, which Wardell placed in the hands of his attorney, who advised him that the title was good, but that there was a mortgage upon the premises, or a large portion thereof, of $8,000, payable to the Connecticut Mutual Life Insurance Company.

A few days later, and before the twenty days had elapsed, plaintiff verbally told the defendant that he would accept the proposition, and requested him to prepare his deed. The defendant then said that William A. Moore, who was the agent of the insurance company, was out of the city, and would not return until the next Tuesday, and he could not get the mortgage discharged until he returned. The time referred to would be beyond the twenty days named in the proposal. Plaintiff asked defendant if he was aware that the

twenty days would expire before the Tuesday referred to, and defendant said that would make no difference,—that he would carry out the contract after sixty days even.

It is conceded that the plaintiff made no tender of the cash payment, or any deed or mortgage, executed or to be executed. Before the Tuesday named arrived, and after the twenty days had expired, the defendant sold the land to another party.

Three questions are presented:

1. Was there a valid contract between the parties?
2. Was the proper rule of damages given to the jury?
3. Does the special finding of the jury support the general verdict?

The validity of the contract is assailed upon several grounds, the principal of which is that it is void by reason of the statute of frauds, which enacts that every contract for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, be in writing, and signed by the party by whom the sale is to be made, or by some person thereunto by him lawfully authorized by writing: How. Stat. § 6181.

If it be conceded that the offer was accepted verbally within the twenty days, the question arises whether such offer and acceptance constituted a completed contract between the parties, or whether it was one step in the negotiations for sale. The offer, upon its face, looks to future action and negotiation between the parties to determine and agree upon the valuation to be placed upon the lots, which were to be released as their value so agreed upon should be paid upon the mortgage. Was this part of the offer an essential part of the terms and condition of sale and payment? The offer states the terms to be $12,000 cash, and the balance of $27,000 to be secured by a mortgage on the farm, payable on or before four years from the date of the mortgage. The manner in which it could be paid before four years was in sums of $1,000 or more, at any time during the four years, and the valuation of each lot was to be agreed upon and placed upon the plat, and the mortgagee was to release lots of

equal value to the amount paid. It is said that these terms were for the benefit of the purchaser, and he might waive stipulations which were for his benefit. It is probably true that the stipulation for a valuation and release was for the benefit of the purchaser, and it was equally probable that it was inserted as a substantial part of the contract at his request.

The memorandum is not the contract between the parties, but the written evidence of it required by the statute, and it is quite clear that the contract of sale and purchase embraced as an essential feature the stipulation that a valuation should be placed upon the lots by future agreement before the contract was completed, and without which it is fair to presume the purchase would not have been made by Mr. Wardell. Had Mr. Williams withdrawn that portion of the offer before the expiration of the twenty days, is it likely that Mr. Wardell would have accepted it as thus modified? Or had Mr. Wardell within the twenty days said to Mr. Williams, "I will accept all of your offer except that portion which relates to the agreement to the valuation of the lots, and the release thereof on payment of an amount of equal value," would such acceptance have bound Mr. Williams? Clearly not, for the reason that the offer must be accepted in the terms as made, without modification. *Routledge v. Grant*, 4 Bing. 653; *Hyde v. Wrench*, 3 Beav. 334; *Thornbury v. Bevill*, 1 Younge & C. Ch. 554; *Kennedy v. Lee*, 3 Mer. 441; *Duke v. Andrews*, 2 Exch. 290; *Hazard v. New England, etc., Ins. Co.*, 1 Sum. 218; *Carr v. Duval*, 14 Pet. 77.

Granting that plaintiff might have waived that feature of the proposition, still there is no evidence that he did waive it. On the contrary, he claims to have accepted the proposition as expressed in the writing. This being so, there were terms which the parties have never agreed upon, and upon which their minds have never met, so as to make a completed contract, and before it was concluded the defendant withdrew altogether and refused to complete it. Did he not have a right to do so? Has not a party a right, before nego-

tiations are concluded, where no consideration has passed, no rights intervened, and the conditions of the parties have not changed, to refuse to go further, although the other party is ready, willing, and anxious to consummate the agreement? *Honeyman v. Marryat*, 21 Beav. 14; *Chinnock v. Marchioness of Ely*, 4 De Gex, J. & S. 647; *Martin v. Mitchell*, 2 Jac. & W. 428; *Lucas v. James*, 7 Hare, 410.

The memorandum shows upon its face that the minds of the parties had not met, and that it was not evidence of a completed agreement, but stated terms which if accepted would be the foundation of further treaty between the parties with reference to essential particulars, which, when agreed upon, would form part of the contract of sale and purchase. Suppose the parties had proceeded with their negotiations, and it turned out that they were unable to agree upon the valuations to be placed upon the lots, would not the whole matter have fallen through? Could either have maintained an action against the other for non-performance, or compelled a performance specifically?

Aside from these considerations, there is another which has been suggested as having an important bearing upon the plaintiff's right to recover. In order to make the offer binding as a contract by acceptance, was it not necessary for the plaintiff to do something more within the twenty days than merely to say, " I accept your offer," or, " I am ready to accept your offer?" Assuming the acts of performance to be simultaneous, was it not necessary for the plaintiff to show either that he made the tender of the $12,000 which he was required to pay down, or that it was waived?

It is conceded that he made no tender or show of the money, and there is nothing in the testimony which tends to show that a tender was waived. The conveyance of the property was not made by the defendant to another purchaser until after the expiration of the twenty days. What was said in the interview with reference to Mr. Moore's absence from town, and obtaining a discharge of the mortgage, was said with reference to what Mr. Williams wished to do, and nothing was said about performance, or excusing per-

formance, on the part of Mr. Wardell. In most, if not all of the cases to which our attention has been called, the party making a verbal acceptance has accompanied the words with a tender of the purchase money. In *Chapman v. Morgan*, 55 Mich. 125, it was said :

> "The agreement, being one which did not bind complainant to accept the land unless he chose, shows very clearly that the refusal given him was not to be enlarged. It bound him, if he wanted the land, to be ready with his money on the very day fixed."

And in *Hawley v. Jelly*, 25 Mich. 94, it was pretty plainly intimated that we were not prepared to hold that the mere acceptance of an offer made without consideration could amount to a land contract.

The testimony relating to the acceptance, and what occurred at that interview, as narrated by the plaintiff when on the stand as a witness in his own behalf, is as follows :

"I said, ' I accept the contract, Mr. Williams.' That was the time McLeod was with me. I accepted it on the second occasion when I saw him with McLeod. I went to him, and said that I was now ready to accept his proposition,—ready to carry out my contract with him. He said, ' Mr. Wardell, it will be impossible at this time. I have just been over to see Mr. Moore, who has a mortgage on the property. He is out of the city, and will not be back until Tuesday. As soon as he comes back I will have the matter settled.' I had expected the deeds on that occasion, and expected he would have everything ready ; and I said to him, ' Are you aware that my contract with you runs out before that time ?' He said, ' Mr. Wardell, it don't matter if that contract runs out ; after sixty days, even, I would carry out my contract with you.' There was nothing said other than it was all right between me and Mr. Williams. I saw him again on Monday morning. Early the next Monday morning I heard that Williams—or Hannan, I believe it was—had sold the farm on Sunday to Mr. Voight. This was what I heard, and Mr. Williams had sent for the abstract. Some messenger had come after it, and I went to see Williams. I wanted to see what was the matter,—to see if the rumor was true. I would not believe it. He did not talk at all, but rushed off into a back room as though I had the small-pox. I asked him

about the contract,—asked what it all meant; and he would not talk on the matter at all, but said, 'I don't want anything to do with you.'"

Under this testimony, it is claimed that no tender was necessary, because defendant had put it out of his power to fulfill the contract by conveying the land to Mr. Voight; and this was the view which the court below took in his instructions to the jury. But the position does not meet the question. The twenty days expired on Friday, the twenty-sixth day of September. The defendant did not contract to sell the land until the twenty-ninth of September, and, unless it can be held that there was a valid extension of the offer to sell, the tender, if necessary, must have been made on or before the twenty-sixth of September. The time limited for acceptance could not be extended by parol,—1 Chit. Cont. (11th Amer. ed.) 155, note *g*,—and hence the conveyance by Williams after the expiration of the time in which plaintiff was to perform or tender performance could not excuse him from making the tender within the time limited by the offer. The discussion of this point, however, need not be pursued further. It has been brought forward to show that the only evidence of anything binding on plaintiff's part is the naked promise implied in the verbal acceptance of the offer, and statement that he " was ready to carry out the contract."

It has been held that a *mere promise* to do an act in future is a sufficient consideration, even without performance, for engagement by the other party. But the true principle underlying such doctrine is that the promise which forms the consideration will subject the party making it to a charge or obligation which he otherwise would not have incurred. By making it he must have incurred a liability to the party to whom it is made, in case he refuses to perform, for which such other party may have an action for damages. How otherwise can such promise amount to a consideration for the promise or agreement of the other party? A promise that cannot be enforced either at law or in equity is a mere *nudum pactum*. *Bean v. Burbank*, 16 Me. 458; *Vantassel v. Hathaway*, 53 Me. 18; *Burnet v. Bisco*, 4

Johns. 235; *Tucker v. Woods,* 12 Id. 190; *Maynard v. Tabor,* 53 Me. 512.

In this case, suppose, after plaintiff had announced his verbal acceptance of the offer contained in the writing, defendant had tendered his deed to plaintiff, and he had refused to pay or otherwise comply with the terms offered, could Williams have maintained an action against Wardell for a breach of contract? Assuredly not, because the promise of Wardell related to interests in lands.

An agreement to execute a mortgage upon real estate is an agreement concerning interests in lands, which, to be valid, must be in writing, or some note or memorandum thereof signed by the party making the promise. Wardell, after making the promise orally to perform the contract, incurred no liability, and was under no legal obligation to perform the promise which he made. This fact distinguishes his promise from those which constitute a consideration for an agreement, and which are capable of enforcement by action at law at the suit of the promisee.

In the case referred to by counsel for plaintiff, reported in 3 Cush. 224 (*Boston & M. R. R. Co. v. Bartlett*), the agreement was as follows:

" *To the President and Directors of the Boston and Maine Railroad*—GENTLEMEN: We, the undersigned, being owners of a lot of land on the Mill creek, we do hereby agree to sell the same to you, or your representatives, for the sum of twenty thousand dollars, if taken within thirty days from date.

" BOSTON, April 1, 1844."

Before the expiration of the time the owners, by a writing underneath the written offer, extended the time for 30 days from the expiration thereof; and before the extended time expired the company elected to take the land on the terms specified, and notified the defendants of its election, and offered to pay them the agreed price (and produced the same in money) for a conveyance of the land; and requested the defendants to execute a conveyance thereof, which it tendered for that purpose.

The defendants refused to execute the conveyance or perform the contract, on the ground that there was no consideration, and the plaintiff filed a bill for specific performance, setting up the writing, and that plaintiff had accepted and had tendered the agreed price and a conveyance, and defendants refused to execute it or perform the contract. Defendants demurred on the ground that the bill showed no consideration for the contract, and that consequently the same was not enforceable at law or in equity. The court said :

" But when the offer was accepted the minds of the parties met, and the contract was complete. * * The acceptance by the plaintiff constituted a sufficient legal consideration for the engagement on the part of the defendants."

And accordingly the demurrer was overruled.

This case differs from the one under our consideration in this :

1. The contract was complete; nothing was left to further treaty.

2. Nothing was left to be done by the party accepting but to pay the purchase price.

3. It tendered the money and deed, so that nothing remained to be done by defendants but to receive the mone- and execute the deed.

The case came before the court again, upon pleadings and proofs, and is reported in 10 Gray, 384, where specific performance was refused because of plaintiff's laches in filing the bill. In disposing of the case the court said : " The plaintiff, having signed no agreement, could never have been compelled by the defendants to take the land." This is placed upon the ground that courts of equity in Massachusetts have no power to enforce specific performance of any but written contracts ; and as the plaintiff had made no written contract by which it was bound, the court would have had no jurisdiction to enforce the contract against it.

This case, as well as the case of *Jacobs v. Peterborough & S. R. P. Co.*, 8 Cush. 223, asserts that an action at law will lie for the breach of such agreement where the party accepting

the written offer refuses to perform; but in neither case was the principle necessary to a decision of the case, and it was not involved in the controversy. If such liability exists, it is only upon the theory that defendant is bound by acceptance so as to afford the other party a remedy upon the promise made, which can never be the case where such promise is void under the statute of frauds.

It is not necessary for us to decide in this case whether a verbal acceptance would be binding when there was nothing to be done by the purchaser except the payment of the purchase money, for the reason that in this case something more was required. The promise of performance by Wardell related to an engagement by him to execute a mortgage, which the statute requires to be in writing in order to be valid. It may be likened to a case where one party signs a written memorandum offering to exchange land which he owns for land which another party owns. This could not be made a valid contract by verbal acceptance and promise to exchange, although the minds of the parties have met, and a valid promise in writing by one party is made, and a corresponding verbal promise given by the other party; yet the verbal promise is not enforceable, because the law says it shall be evidenced by writing. It has frequently been held in this State that a contract void under the statute of frauds is a mere nullity, and cannot be used for any purpose whatever. *Chamberlain v. Dow*, 10 Mich. 319; *Hall v. Soule*, 11 Id. 494; *Holland v. Hoyt*, 14 Id. 238; *Grimes v. Van Vechten*, 20 Id. 410; *Hillebrands v. Hibbelink*, 40 Id. 646; *Sutton v. Rowley*, 44 Id. 112.

Another reason is assigned by defendant's counsel why the contract claimed to have been entered into is not valid, which is based upon the act of the Legislature of 1879 entitled "An act to provide for the execution, acknowledgment, and recording of contracts for the sale of lands." We do not deem it necessary to pass upon this question, as what we have said disposes of the merits of the controversy presented upon this record.

Under the foregoing views, the question of damages, and

whether the verdict of the jury supports the general verdict, need not be discussed.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.