*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LIVONIA GATEWAY INVESTMENTS, LLC,

        Plaintiff-Appellant,

v

BROOK PROPERTY HOLDING, LLC,

        Defendant-Appellee.

UNPUBLISHED
February 28, 2019

No. 340439
Wayne Circuit Court
LC No. 17-002832-CB

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Plaintiff, the intended purchaser in a failed real estate transaction, appeals as of right the trial court order granting defendant-seller's motion to release an earnest money deposit, as well as the trial court's order for plaintiff to show cause and imposing sanctions on plaintiff. Plaintiff also challenges the trial court's order granting defendant's amended motion for summary disposition. We affirm in part, reverse in part, and remand.

## I. FACTUAL BACKGROUND

This matter concerns a never-consummated real estate transaction in which plaintiff sought to purchase certain properties (the Properties) from defendant. Lixing Cao is a part owner and the managing partner of defendant. Ali Bazzy is the sole owner and representative of plaintiff. The Properties are commercial properties located on Schoolcraft Road in Livonia, Michigan. Sometime in the fall of 2015, Bazzy contacted Cao about purchasing the Properties. The business dealings between Bazzy and Cao were informal. On October 11, 2015, Bazzy—on behalf of plaintiff company, which had not yet been formed—signed an offer to purchase the Properties from defendant, subject to certain terms and conditions. On October 13, 2015, Cao signed the purchase agreement on defendant's behalf. The purchase price of the Properties was to be $730,000, with an earnest money deposit of $10,000 and $720,000 due at closing. Plaintiff deposited the earnest money into an escrow account managed by First American Title.

The meager, two-page purchase agreement contains the following paragraphs that are particularly relevant to the issues on appeal:

1. This offer is subject to Buyer obtaining a real estate mortgage for no less than SIX HUNDRED THOUSAND DOLLARS ($600,000.00) payable over 20 years with interest not to exceed six percent (6%) at customary terms with a firm commitment thereto 60 days from date hereof.

* * *

6. The parties agree to execute a standard purchase and sales agreement according to the terms of this agreement within 15 days of acceptance of this offer.

7. The closing shall occur on or before DECEMBER 30, 2015, at the public recording office, unless such other time and place shall be agreed upon.

* * *

9. This offer shall remain open until 12 o'clock a.m., on October 19, 2015, and if not accepted by said time, this offer shall be deemed rescinded and all deposits shall be refunded.

Although the purchase agreement dictated that the parties would execute a standard purchase and sales agreement within 15 days of acceptance of the purchase agreement, the parties never executed such an agreement. Indeed, the parties never executed any agreement other than the original purchase agreement. Further, plaintiff never was able to obtain the financing for the $600,000 as required by ¶ 1 of the agreement. As a result, the parties did not close on December 30, 2015, but they nevertheless continued to communicate about how to proceed toward closing. After several months of meetings and negotiations, plaintiff approached defendant with a proposal, where defendant would finance a second mortgage for plaintiff. Defendant was open to the idea but never committed to a specific agreement. Indeed, both parties presented their own draft agreements for the mortgage, but the parties ultimately could not reach an agreement on the terms.

On September 23, 2016, Cao e-mailed Bazzy to explain that the original purchase agreement had long since expired, that an agreement regarding a second mortgage was never reached, and that he no longer was comfortable with financing a second mortgage. On September 26, 2016, Cao e-mailed First American Tile with instructions to release to plaintiff the $10,000 earnest money deposit, which was still held in escrow. However, the earnest money deposit remained in escrow because plaintiff refused to execute a termination agreement as requested by First American Title. Defendant thereafter sold the Properties to another buyer on or about September 30, 2016, for $650,000, which was $80,000 less than the price for which defendant had intended to sell to plaintiff.

Plaintiff filed a complaint against defendant, alleging breach of contract and silent fraud. In an amended complaint, plaintiff added a count of promissory estoppel. Regarding the breach of contract claim, plaintiff did not rely on the written purchase agreement—instead, alleging that certain "modifications" had occurred to the agreement, including that defendant would provide a financed amount of $320,000 to plaintiff, and therefore that plaintiff had satisfied all conditions precedent to closing, resulting in defendant's breach of the contract when it failed to sell the

property to plaintiff. Regarding the promissory estoppel claim, plaintiff alleged that the original purchase agreement and subsequent modification constituted a clear and definite promise that "the agreement to sell continued to be valid, binding, and enforceable." And for the fraud claim, plaintiff alleged that defendant committed silent fraud when defendant failed to advise plaintiff that defendant was going to enter into a competing purchase agreement.

Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), arguing that there was no genuine issue of material fact regarding defendant's alleged breach of contract because the purchase agreement required plaintiff to obtain a mortgage for $600,000 within 60 days from the execution of the agreement as a condition precedent to selling the property, and plaintiff failed to obtain such financing. Further, defendant argued that the parties never reached an agreement regarding the financing of the $320,000 and, in any event, the statute of frauds barred any oral agreement between it and plaintiff. Regarding the promissory estoppel claim, defendant argued that such a claim was invalid because the doctrine of promissory estoppel cannot apply in a case involving the sale of real estate in which the statute of frauds applies. Finally, defendant argued that the fraud claim should be dismissed because it did not arise from a duty separate and distinct from defendant's purported contractual obligations, and thus defendant was limited to a claim of breach of contract.

In response, plaintiff asserted that the doctrine of promissory estoppel serves as an exception to the statute of frauds in this case and that plaintiff suffered damages as a result of its reliance on defendant's promises. Plaintiff also relied on the doctrine of partial performance to argue that it was entitled to damages for losses it incurred as a result of defendant's actions. In support of its silent fraud claim, plaintiff simply argued that defendant "strung" plaintiff along by failing to notify plaintiff that the property was going to be sold to someone else.

The trial court granted defendant's motion for summary disposition, holding that the purchase agreement was "void" because plaintiff failed to obtain financing as required by the agreement and that the statute of frauds barred any oral modification to the purchase agreement. The trial court also found that the parties' continued negotiations did not result in a written agreement and that, therefore, plaintiff could not enforce an oral agreement for defendant to provide a portion of the financing. The trial court also rejected plaintiff's partial performance and promissory estoppel claims. Finally, the court ruled that plaintiff's silent fraud claim failed as well because plaintiff's complaint failed to allege that defendant had a duty to make any of the disclosures plaintiff asserted were required.

Following the trial court's ruling from the bench, defendant raised an issue regarding the $10,000 earnest money deposit, asserting that there remained an open issue with respect to which party should get the $10,000 earnest money deposit. In its June 30, 2017 order granting defendant's motion for summary disposition, the trial court also ordered defendant to submit a motion and brief on the issue of the deposit by July 11, 2017.

On July 11, 2017, defendant filed a motion pursuant to MCR 2.116(C)(10) on this remaining "claim," arguing that plaintiff forfeited the earnest money deposit by failing to fulfill its obligation to obtain financing under the purchase agreement, which prevented the parties from closing on the real estate transaction. In response, plaintiff primarily argued that defendant had waived any claim to the deposit when it previously had instructed the title company to give the

funds to plaintiff. On July 28, 2017, the trial court held a hearing on defendant's motion and determined that defendant was entitled to the funds, ruling that the purchase agreement provided only a single condition under which the earnest money would be returned—if defendant failed to accept the purchase agreement—and that condition did not come to pass, as defendant had timely accepted the agreement. On August 16, 2017, the trial court entered an order consistent with its July 28 pronouncement.

Thereafter, defendant discovered that plaintiff on July 10, 2017, had requested First American Title to return the $10,000 earnest money deposit to plaintiff; on July 11, 2017, First American Title did release the funds to plaintiff. Thus, when the trial court held the July 28, 2017 hearing on defendant's motion regarding the earnest money deposit, plaintiff already had withdrawn the money. Consequently, in September, defendant filed a motion for an order to show cause why plaintiff should not be held in contempt of court and sanctioned for violating the trial court's order to release the earnest money deposit to defendant. According to defendant, between August 18, 2017, and August 31, 2017, defendant asked plaintiff several times to comply with the trial court's August 16, 2017 order. In response, plaintiff admitted that plaintiff had requested First American Title to release the earnest money deposit to plaintiff but argued that the trial court's order regarding the escrow, which was issued after the money already had been released, did not enjoin the funds, did not direct that the funds be escrowed, and did not order plaintiff to perform or not perform any act.

At the time of the trial court's hearing on defendant's motion on September 22, 2017, plaintiff still had not returned the earnest money deposit to defendant or First American Title. According to plaintiff's counsel, plaintiff did not have the $10,000 but was willing to make a deposit of $1,500 that day and pay the remainder of the money 14 days later. The trial court rejected the proposal and entered an order to show cause why plaintiff should not be held in contempt of court. The court order provided that plaintiff would not have to appear if no later than October 6, 2017, $10,000 was paid to defendant, plus another $2,000 in attorney fees and $1,500 in sanctions to defense counsel.

## II. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred in granting defendant's motion for summary disposition. Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). However, because the parties relied on materials outside the pleadings, we review the motion as having been decided under MCR 2.116(C)(10). See *Van Buren Twp v Visteon Corp*, 319 Mich App 538, 544; 904 NW2d 192 (2017). This Court reviews a trial court's decision whether to grant a motion for summary disposition de novo. *Kelly-Stehney & Assoc, Inc v MacDonald's Indus Prod, Inc*, 265 Mich App 105, 110; 693 NW2d 394 (2005). A motion for summary disposition under MCR 2.116(C)(10) is properly granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Transou v City of Pontiac*, 283 Mich App 71, 73; 769 NW2d 281 (2009). "Similarly, '[t]his Court reviews de novo questions of law such as whether the statute of frauds bars enforcement of a purported contract.' " *Kelly-Stehney*, 264 Mich App at 110 (citation omitted). Questions concerning the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

" 'Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court.' " *Van Buren Twp*, 319 Mich App at 547, quoting *Meagher v Wayne State Univ*, 222 Mich App 700, 721; 565 NW2d 401 (1997). Even an "inartfully worded or clumsily arranged" contract will be considered unambiguous so long as one interpretation of the contract is apparent. *Meagher*, 222 Mich App at 722. This Court must enforce the clear and unambiguous contractual language as written. *Van Buren Twp*, 319 Mich App at 547. On the other hand, the meaning of an ambiguous contractual provision is a question of fact which is reserved for the fact-finder to ascertain. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003).

## A. PLAINTIFF'S CLAIMS

According to the purchase agreement, as a condition precedent to closing, plaintiff was required to obtain a $600,000 mortgage within 60 days from the execution of the agreement. "A condition precedent is a fact or event that the parties intend must take place before there is a right to performance." *Able Demolition v City of Pontiac*, 275 Mich App 577, 583; 739 NW2d 696 (2007) (quotation marks and citation omitted). " 'Failure to satisfy a condition precedent prevents a cause of action for failure of performance.' " *Id*., quoting *Berkel & Co Contractors v Christman Co*, 210 Mich App 416, 420; 533 NW2d 838 (1995). Plaintiff concedes that it never obtained a mortgage for $600,000. Accordingly, plaintiff's failure to obtain the necessary financing relieved defendant of its obligation to perform under the purchase agreement, i.e., to sell the Properties to plaintiff. Therefore, the trial court properly determined that defendant was entitled to summary disposition on plaintiff's breach of contract claim.

In an attempt to evade the legal consequences of its failure to satisfy the purchase agreement's condition precedent, plaintiff argues that defendant's promise to provide plaintiff with a second mortgage orally modified the purchase agreement. We disagree.

A written contract may be modified. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 454; 733 NW2d 766 (2006). However, the modification "must be by mutual consent." *Id*. " 'The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract.' " *Id*. at 455, quoting *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 373; 666 NW2d 251 (2003). The clear and convincing evidence standard is "the most demanding standard applied in civil cases." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Clear and convincing evidence is defined as the type of proof which

> "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Id*. (citation omitted).

Plaintiff fails to provide any evidence, let alone clear and convincing evidence, that the parties mutually consented to modify the contract. Instead, the record demonstrates that the parties attempted to negotiate a modification to the contract, specifically for providing financing associated with a second mortgage. Both parties presented their own proposed second mortgage

terms, which neither party accepted. While defendant may have told plaintiff that it was willing to execute an agreement for a second mortgage in principle, it is clear that the parties never reached mutual agreement as to the terms of such an agreement.

Further, plaintiff's claim that the purchase agreement was orally modified ignores the mandates of the statute of frauds, which controls regarding the sale of land in Michigan. *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 524; 644 NW2d 765 (2002). "The statute of frauds, in regards to the sale of land, is comprised of MCL 566.106 and MCL 566.108." *Id.* MCL 566.106 provides:

> No estate or interest in lands,[1] other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

And MCL 566.108 provides:

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing . . . .

Therefore, with plaintiff's breach of contract claim being predicated solely on an alleged breach of the *modified* purchase agreement, the claim is not viable without any evidence of a *written* modification to the purchase agreement. Moreover, looking past any statute of fraud requirements, plaintiff does not present any evidence as to what the terms of any alleged oral modifications were. Thus, assuming an oral agreement existed and the statute of frauds was not at issue, the terms and conditions of that oral modification remain unknown. Because plaintiff cannot proffer any evidence that the parties agreed to modify the purchase agreement and what those new terms were, defendant is entitled to summary disposition on plaintiff's breach of contract claim.

Rather than address the fundamental aspects of contract law and modifications of a contract, plaintiff challenges the trial court's decision to grant defendant summary disposition by arguing that the trial court failed to recognize that the doctrines of partial performance and promissory estoppel are exceptions to the statute of frauds in the context of real estate transactions.

---

[1] Of note here, a mortgage is an interest in land and, therefore, is subject to the statute of frauds. *Aetna Mortgage Co v Dembs*, 13 Mich App 686, 691; 164 NW2d 771 (1968), citing *Wardell v Williams*, 62 Mich 50, 60; 28 NW 796 (1886).

"Promissory estoppel is a judicially created doctrine that was developed as an equitable remedy applicable in common-law contract actions." *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 548 n 4; 619 NW2d 66 (2000). Under the promissory estoppel doctrine,

> "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." [*State Bank of Standish v Curry*, 442 Mich 76, 83; 500 NW2d 104 (1993), quoting 1 Restatement Contracts, 2d § 90, p 242.]

Plaintiff cites to an abundance of caselaw that recognizes promissory estoppel as an exception to the statute of frauds, but as it forthrightly concedes in its brief on appeal, while Michigan courts have "recognized promissory estoppel as an exception in cases involving statutes of frauds generally," they have "not yet addressed that exception in the context of a real estate transaction."[2] However, we need not determine if the doctrine applies in a real estate context because even if we assume it does, there is no evidence of an oral promise. As previously discussed, plaintiff cannot prove, even after months of discovery, that the parties agreed to modify the purchase agreement, or even what that oral modification entailed.

Likewise, plaintiff's reliance on the doctrine of partial performance is misplaced. The doctrine provides:

> "If one party to an oral contract, in reliance upon the contract, has performed his obligation thereunder so that it would be a fraud upon him to allow the other party to repudiate the contract, by interposing the statute [of frauds], equity will regard the contract as removed from the operation of the statute. *The contract to be enforced must be established by clear and convincing evidence.*" [*Barclae v Zarb*, 300 Mich App 455, 475; 834 NW2d 100 (2013) (emphasis added), quoting *Guzorek v Williams*, 300 Mich 633, 638-639; 2 NW2d 796 (1942).]

As already discussed, there is no evidence, let alone clear and convincing evidence, that an oral agreement existed between plaintiff and defendant to modify the purchase agreement. Therefore, plaintiff cannot avail itself of the partial performance doctrine.

---

[2] See, e.g., *Nygard v Nygard*, 156 Mich App 94, 99; 401 NW2d 323 (1986) (stating that promissory estoppel may apply if statute of frauds prevents enforcement of child support contract); *Pursell v Wolverine-Pentronix, Inc*, 44 Mich App 416, 420; 205 NW2d 504 (1973) (applying promissory estoppel to oral contract that could not be performed within one year).

Therefore, we hold that the trial court properly granted defendant's motion for summary disposition with respect to plaintiff's breach of contract claim and promissory estoppel claim.[3]

## B. EARNEST MONEY DEPOSIT

Plaintiff next argues that the trial court erroneously granted defendant's motion[4] to obtain the earnest money deposit because it brought "preconceived notions and equitable principles into the dispute," and failed to properly construe the parties' intent as to the disposition of the money in the event that the sale fell apart. We agree that the trial court erred in awarding the earnest money deposit at this stage.

This Court reviews de novo the proper interpretation of a contact, which is a question of law. *Klapp*, 468 Mich at 463. When interpreting a contract, this Court's primary objective is to honor the parties' intent, which is best derived from the words used in that contract. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 446; 886 NW2d 445 (2015). This Court is prohibited from writing a different contract, or from considering extrinsic evidence to determine the parties' intent when the contract language is clear and unambiguous. *Id*.

The only provision in the purchase agreement that addresses the earnest money deposit states:

9. This offer shall remain open until 12 o'clock a.m., October 19, 2015, and if not accepted by said time, this offer shall be deemed rescinded and all deposits shall be refunded.

According to defendant, the single unambiguous provision in this paragraph—seller's failure to accept the terms of the purchase agreement by October 19, 2015—is the only scenario in which the parties intended for the return of the earnest money deposit to plaintiff. Defendant therefore argues that it is entitled to the earnest money deposit because it accepted the terms of the purchase agreement by the stated deadline. However, plaintiff contends that the purchase agreement, as a whole, was silent with respect to the earnest money deposit in the event that the parties failed to close.

We decline to interpret that paragraph as the only way for plaintiff to have recovered the earnest money deposit. Instead, ¶ 9 simply expressed what would happen in the event that defendant did not sign the purchase agreement by a certain date. Defendant's reliance on the rule of interpretation *expressio unius est exclusio alterius*, under which "[t]he expression of one thing is the exclusion of another," *Grinnell Bros v Brown*, 205 Mich 134, 137; 171 NW 399 (1919); see also *Diallo v LaRochelle*, 310 Mich App 411, 420-421; 871 NW2d 724 (2015), is misplaced. Except for the scenario in which defendant failed to accept the purchase agreement

---

[3] Plaintiff on appeal does not address the dismissal of its silent fraud claim. Thus, that particular issue is not before us.

[4] As previously noted, defendant's motion regarding the earnest money deposit was brought as a motion for summary disposition pursuant to MCR 2.116(C)(10).

by October 19, 2015, the contract is silent as to what is to happen to the earnest money deposit in the event the agreement is breached or closing does not occur.

Although the contract is silent on what is to happen to the earnest money deposit in the event plaintiff breached the contract this "silence does not equal ambiguity if the law provides a rule to be applied in the absence of a provision to the contrary." *Norman v Norman*, 201 Mich App 182, 184; 506 NW2d 254 (1993). While we are aware that, customarily, purchase agreements allow for the seller to retain such a deposit in the event the buyer breaches or otherwise causes a contract to fail, we have not found any rule or caselaw—and the parties have not identified any—that *requires* this disposition. Instead, the disbursement of the earnest money deposit appears to be dictated by the parties' intent, as reflected in the terms of the parties' purchase agreement. See, e.g., *Jonna v Diversity Corp*, 368 Mich 231, 232-233; 118 NW2d 471 (1962); *Worley v McCarty*, 354 Mich 599, 602; 93 NW2d 269 (1958). Therefore, we hold that the purchase agreement is ambiguous on this point. As our Supreme Court has recognized:

> It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury. Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions. [*Klapp*, 468 Mich at 469 (quotation marks and citations omitted).]

Therefore, because the purchase agreement is ambiguous on what is to happen with the earnest money deposit under these circumstances, the parties' intent on this matter is a question of fact for the trier of fact to resolve. Consequently, with this open question of fact, it was improper to grant defendant's motion, which was based on summary disposition under MCR 2.116(C)(10). In other words, defendant, as the moving party, failed to establish that there was no question of fact as to the parties' intent regarding the earnest money deposit; therefore, its motion should have been denied. See *Transou*, 283 Mich App at 73.[5]

## III. ATTORNEY FEES AND SANCTIONS

---

[5] We stress that our ruling does not address which party ultimately should receive the deposit. Instead, our ruling merely provides that at this summary disposition phase, defendant cannot show as a matter of law that it was entitled to keep the funds. Our ruling does not preclude the trier of fact from later determining that the parties intended for plaintiff to forfeit the deposit if it breached the contract, but it also does not compel such a decision.

We also decline to address plaintiff's assertion in its brief on appeal that defendant could not recover the deposit without a valid counterclaim. Plaintiff never raised this issue at the trial court and instead fully participated in the hearing on the merits regarding the deposit; we therefore decline to address it. See *Polkton Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005) ("We need not address issues first raised on appeal.").

Plaintiff also argues that the trial court erred because the trial court's "contempt" proceedings were criminal in nature and the process was fundamentally unfair. We disagree.

This Court reviews a trial court's decision to award attorney fees for an abuse of discretion. *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 422; 668 NW2d 199 (2003). Similarly, a trial court's exercise of its inherent authority to sanction a litigant is reviewed for an abuse of discretion. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

At the outset, both parties focus on whether the trial court held a criminal or civil contempt proceeding. However, the trial court did not hold a contempt proceeding at all; therefore, there is no criminal/civil distinction to make. Here, defendant sought two forms of relief in its motion for sanctions and civil contempt: (1) an order to show cause why plaintiff should not be held in civil contempt for failing to follow court orders and (2) an award of attorney fees. In response, plaintiff admitted that Bazzy requested that First American Title release the earnest money after the trial court had ruled that plaintiff's claims were to be dismissed, but plaintiff generally denied that it violated any court orders.

Contrary to the parties' assertions, the trial court did not hold a contempt proceeding but instead merely held a hearing on defendant's motion. The trial court explicitly stated that it was entering an order to show cause as to why plaintiff should not be held in contempt for its actions in connection with demanding the release of the earnest money deposit. The trial court's order scheduled a show-cause hearing for October 6, 2017. Therefore, it is clear that the trial court never found plaintiff in either civil or criminal contempt. However, the order also stated that plaintiff could avoid the show-cause hearing entirely if it paid the $10,000 earnest money deposit it had obtained from First American Title, $2,000 in attorney fees, and an additional $1,500 in sanctions.

We have already ruled that it was premature for the trial court to award defendant the $10,000 earnest money deposit by way of summary disposition, so that portion of the order would have to be vacated in any event. Therefore, we will turn our attention to the award of the $2,000 in attorney fees and the $1,500 in sanctions.

The trial court's decision to sanction plaintiff $1,500 was well within its authority and the range of reasonable and principled outcomes. It is well established that "[t]rial courts have inherent authority to impose sanctions on the basis of a party's misconduct." *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 594-595; 884 NW2d 587 (2015); see also *Persichini v William Beaumont Hosp*, 238 Mich App 626, 639; 607 NW2d 100 (1999). Plaintiff admitted that Bazzy requested the return of the earnest money deposit shortly after the trial court had ruled from the bench that plaintiff's claims were to be dismissed and that the issue of the earnest money deposit *was still pending and before the court*. Hence, plaintiff obtained the deposit despite being well aware that the disposition of the earnest money was in dispute and that the trial court intended to address the issue at a later hearing. The trial court deemed $1,500 in

sanctions appropriate for the $10,000 in dispute at the time, coupled with plaintiff's actions to seemingly thwart the trial court's procedure for resolving the issue.[6] Given these circumstances, we cannot conclude that the trial court's decision was an abuse of discretion.

Likewise, the trial court's decision to award defendant attorney fees also was within the range of reasonable and principled outcomes. With respect to the payment of attorney costs and fees, Michigan adheres to the "American rule." *Haliw v Sterling Hts*, 471 Mich 700, 706; 691 NW2d 753 (2005). The American rule provides that " 'attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides the contrary.' " *Smith*, 481 Mich at 526, quoting *Nemeth v Abonmarche Dev, Inc*, 457 Mich 16, 37-38; 576 NW2d 641 (1998), and *Haliw*, 471 Mich at 706. One recognized exception to the American rule is the trial court's inherent power to sanction a litigant for misconduct by way of assessing attorney fees. *Persichini*, 238 Mich App at 639. When awarding attorney fees as a sanction for a litigant's misconduct, the trial court should balance "the harshness of the sanction against the gravity of the misconduct," and in consideration of the amount of attorney fees, the court should sanction no more than what would place the litigant requesting fees "in the position they would have been in absent the misconduct." *Id*. at 642-643.

The trial court's award of attorney fees in this case constitutes an exception to the general rule because it was an exercise of its inherent authority to sanction. See *id*. at 639 (affirming the trial court's award of attorney fees to the defendants because the deliberate improper questioning by plaintiff's counsel resulted in a mistrial). The trial court awarded attorney fees that defendant incurred as a result of plaintiff's misconduct, which demonstrates that the trial court simply attempted to place defendant in the same position it would have been in absent plaintiff's improper actions.[7] Accordingly, the trial court did not abuse its discretion.[8]

However, as noted already, although the trial court did not abuse its discretion in ordering plaintiff to pay sanctions and attorney fees as a result of plaintiff's misconduct, our ruling necessitates that we vacate the court's order to show cause to the extent that it required plaintiff to pay the $10,000 earnest money deposit to defendant.

We affirm the grant of summary disposition in favor of defendant as to plaintiff's claims. We reverse the grant of summary disposition in favor of defendant related to the earnest money

---

[6] The trial court expressly noted that Bazzy had communicated with the title company "after this issue [regarding the disposition of the funds] had been tee'd up for my decision and got the money using an e-mail from last year."

[7] We also note that plaintiff does not contest the reasonableness of the $2,000 in attorney fees that were awarded, only whether an award of attorney fees was justified at all.

[8] The fact that we have determined that the court erroneously awarded the $10,000 earnest money deposit to defendant has no effect on our analysis because the sanctions addressed plaintiff's conduct that primarily occurred *prior to* the court's actual award of the $10,000. As already discussed, the various sanctions were based on plaintiff's conduct of obtaining the $10,000, when plaintiff was fully aware that the court was poised to decide on the issue.

deposit and remand for proceedings not inconsistent with this opinion. Finally, we vacate the portion of the trial court's September 26, 2017 order to show cause requiring plaintiff to pay the earnest money deposit, but we affirm the portion awarding sanctions and attorney fees as a valid exercise of the trial court's inherent power to sanction improper behavior. We do not retain jurisdiction. No taxable costs, as neither party prevailed in full. MCR 7.219.

/s/ Jonathan Tukel
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola