WILLIAM P. BUCKMASTER *against* THE CONSUMERS' ICE COMPANY.

A purchaser of stock in a manufacturing corporation, may maintain an equitable action against the company, to compel it to transfer the stock to him on the books of the company, if an ordinary action for damages would not afford him adequate relief.

A corporation organized under the general manufacturing act may, by agreement with a stockholder, acquire a valid lien on the stock held by him to secure his obligations to the company, so that the stock cannot be transferred by him until such obligations are paid.

An agreement for the purchase of ice, to be delivered in the future, at a price which shall afford the party delivering it a net profit not to exceed one dollar per ton, is void for uncertainty.

APPEAL by plaintiff from a judgment of this court at special term dismissing the complaint.

The action was brought to compel the defendant to transfer on its books certain shares of its stock to the plaintiff. The facts are stated in the opinion. After a trial at special term, the complaint was dismissed. The plaintiff appealed to the general term.

ROBINSON, J.—Antecedently to the incorporation of the defendants under the general manufacturing act, and in February, 1870, some fifty different individuals and firms, including one Alexander Hudnut, agreed together to subscribe to the stock of such a company, to be incorporated under that act, and each agreed to take a certain number of shares of stock in the company, said Hudnut agreeing to take two shares out of 1,013 subscribed for. They also agreed between themselves, that they would each purchase from the company all ice they might severally require in their business, which the company might be able from time to supply, at a net profit not to exceed one dollar per ton, and that the stock so subscribed for should not be transferable, unless the holder should have fully complied with all of such obligations. The company was subsequently incorporated with a capital of $250,000, divided into 2,500 shares of $100 each, and a certificate of two of such shares issued by the company to Hudnut, dated May 4th, 1871, which contained the provision, "Said stock shall not be transferred, unless the holder thereof shall have fully complied with all the conditions and obligations he entered into when he subscribed for the same, and he shall be at the time of said transfer free from all debt or debts due said company."

The two shares of stock were sold by said Hudnut to plaintiff prior to July 3d, 1871, who on that day caused the certificate, with a power of attorney indorsed, authorizing him to make a transfer thereof on the books of the company, to be presented to the company, and demanded such transfer thereof to be made to him, which they refused, and he brings this action to enforce such transfer.

No question is raised, as to the power or duty of the court to compel such transfer, from want of any averment in the complaint of any special reason why the plaintiff should not be left to his action for damages, and the pleadings fully disclose from the circumstances of the case that it is one for equitable cognizance ( *White* v. *Schuyler*, 1 Abb. Pr. N. S. 300 ; s. c. 31 How. Pr. 38). The complications in the title presented by the answer show that the value of the free stock would be thereby greatly diminished, and made difficult of any certain or precise estimate.

The defense relied on in the action and presented by the evidence is that the company had become able to supply its stockholders with the ice they might require in their business, upon the terms stated in the agreement, but that although Hudnut used ice in his business, he did not purchase any of the defendants. For his failure to do so, the learned judge on the trial held the stock untransferable and dismissed the complaint.

In this I think he erred. Whatever may be the objection to any company incorporated under the general manufacturing act imposing, even with consent of the stockholders, restrictions upon the transferability of its shares of stock or of forfeiture to the company, it cannot be doubted that it may, by agreement with the stockholder, acquire a valid lien upon a pledge of the stock of the company owned by him for the purpose of securing his debts or obligations to it.

This lien or pledge was all that was attempted to be effected by the provision in the stock certificate issued to Hudnut. While the stipulations contained in the preliminary agreement were, prior to the formation of the corporation, only enforceable as between the parties to it, the company, by its issue of stock certificates adopting the stipulations intended for its benefit, and making them obligatory upon the stockholder to whom it was issued, necessarily assumed by implication a corresponding obligation to do and perform that which was stated as a consideration for the acts expressly undertaken by the other party, to wit, to sell and deliver the ice required in his business upon the terms stated (*Pordage* v. *Cote*, 1 Sand. 319 ; *Justice*

v. *Lang*, 52 N. Y. 329). If regarded, as it must be, as a contract for the sale and purchase of such ice as Hudnut required in his business, the pleadings neither alleged, nor did the proofs establish, any such breach of the contract as conferred on the company any right to the recovery of damages. No tender or offer was ever made to him of any ice. The notice given him in February, that they would be ready, " about the first of April," to deliver ice, was a mere general notice, having no reference to any particular demand or tender under the requisitions of the contract, nor is there a suggestion that any loss was sustained from any deficiency in the market price obtainable through ordinary sales, and that which he had agreed to pay. There was therefore no debt shown to be due from him to the company, when he sold the stock to the plaintiff. Nor was there any subsisting or continuing obligation from his agreement to purchase from the company all ice he required in his business. This terminated with his transfer of the stock. The contract between the company and Hudnut only subsisted while the company subsisted and were able to supply him with ice, and also while he continued a stockholder. Its benefits and disadvantages were personal to each while their relations as corporation and stockholder continued. When those ceased, the lien of the company upon the stock (there being no debt or duty owing by Hudnut to the company), and their authority over and right to interfere with the transfer to plaintiff ceased. By the provisions of the contract under consideration, the company was to supply the stockholder with ice upon the terms suggested, and being between parties standing in that relation, the profit intended was not the advance upon the cost of the *particular* article delivered, but had relation to and was to be predicated upon the cost to the company of producing, maintaining and delivering its whole supply, and assuming, for the sake of argument, that it was the intention of the parties to insure a continuance of the obligation of the stockholder to make his purchase of ice from the company so long as he carried on business requiring the use of that article, there was yet wanting too many elements of certainty to admit of its enforcement. The price at which the ice was to be supplied and paid for was

wholly indefinite and incapable of exact calculation. It was declared that it was to be delivered at a price that was to afford the company a *net profit not to exceed one dollar per ton.* Such designated profit was not " one dollar," nor "not less than one dollar per ton," but was to be anywhere from nothing to one dollar in the extreme. How any intermediate amount of profit could be fixed otherwise than by future agreement, it is impossible to conjecture, and if it was to be by future agreement, the contract was not legally binding on either party, as neither could be compelled to *agree* with the other.

Another element in such price was also indeterminate, and that was the cost to the company, upon which any such *net profit* could be predicated.

Considering the ever recurring risks, losses and expenses of the company in conducting such an extensive business as the producing and supply of ice to its numerous customers, the precise cost to the company of each quantity of ice supplied day by day to Hudnut, and for which payment was required by the contract to be made on delivery, must have been necessarily a matter incapable of exact ascertainment. A *cy pres* principle of a merely approximate estimate could at most be adopted, and this finds no recognition in any rule of certainty, upon which legal contracts are founded and can alone exist.

Being of the opinion that the stipulation annexed to the certificate for the purchase of ice, at a profit not exceeding one dollar per ton, was void for uncertainty, and that the defendants have no lien or right of interference with the transfer of the stock in question, I am of the opinion the judgment should be reversed, and judgment absolute for plaintiff, requiring a transfer of the stock on the books of the company, as prayed for, with costs.

J. F. DALY, and LARREMORE, JJ., concurred.

Ordered accordingly.