DAYTON v. STONE.

CONTRACTS—PURCHASE PRICE—UNCERTAINTY.

A contract for an exchange of merchandise for other property, by the terms of which the undamaged goods are to be inventoried and taken at cost prices, and the damaged goods at "prices agreed upon," is uncertain as to the price to be paid for the damaged goods, and cannot be enforced.

Error to Ingham; Person, J. Submitted October 23, 1896. Decided December 18, 1896.

*Assumpsit* by Sarah M. Dayton against William B. Stone for the breach of a contract for the sale of goods. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*M. V. & R. A. Montgomery*, for appellant.

*S. L. Kilbourne* and *Black & Dodge*, for appellee.

LONG, C. J. The parties entered into the following contract:

"Agreement made this day, January 5, 1895, between S. M. Dayton and W. Stone & Company. She, S. M. Dayton, sells her entire stock of goods, fixtures, and store furniture situated at 222 Washington Avenue North, Lansing, Michigan, at wholesale cost price, except goods that are damaged, to W. Stone & Company,—the damaged goods at prices agreed upon,—and is to take in pay for said goods what notes W. Stone & Company now hold against George M. Dayton as part pay; and five (5) houses and lots on Center street (Lansing), now owned by W. Stone & Company, for forty-five hundred dollars ($4,500); one house and lot in Englewood addition, now being erected, to be finished according to plans and specifications, said house to be completed by the 1st day of April next, for $2,000. Balance, if there should be any, duebill on the firm for said amount, to be paid

in lumber out of shop.   Parties are each to pay one-half of the commission, one and one-half per cent. each.   Invoice of goods to be commenced Monday, January 7, 1895.   Each of the parties to pay one-half of the expense of invoicing.

      "SARAH M. DAYTON.
       "W. B. STONE & COMPANY.
"Witness: J. E. CARROLL."

Action was brought upon this contract, and on the trial the court directed verdict in favor of the defendant.

On the trial this contract was offered in evidence by the plaintiff, and received.   The plaintiff then introduced evidence tending to show that upon the 7th of January, 1895, she employed Mr. Watrous, and the defendant employed Daniel C. Hurd, to inventory the goods referred to in the contract; that they went forward with such invoice until 11 o'clock the following day, when defendant called Mr. Hurd away from the work, and stated that he would go no further with the deal; that some days afterwards the plaintiff made arrangements with Mr. Hurd to go back, and help through with the inventory; that, on Wednesday of the following week, Mr. Hurd and Mr. Watrous began the inventory again, and went on and finished it; that the goods were measured, and handed to Mr. Hurd and Mr. Watrous; that Watrous announced the cost to Hurd, who looked occasionally through the goods to see if the price was correct; that a part of the goods so inventoried after Mr. Stone's withdrawal were damaged, and a part of them undamaged; that the parties inventorying them assorted them out, put down the undamaged goods at cost, and the damaged goods at what they thought they were fairly and honestly worth; and that the inventory footed up to $19,426.29.   The plaintiff also called the defendant as a witness, who testified that, when the contract was made, W. B. Stone & Co. owned five houses on two lots (and no others) on Center street, Lansing, worth from $3,000 to $3,500; also, a house in process of construction in Englewood addition, worth probably $2,000; that they held notes

against George M. Dayton, principal and interest aggre-
gating about $3,000; that they, for some time prior
thereto, and ever since, and now, are conducting a lumber
business in the city of Lansing; that they keep lumber
and a lumber yard, in which articles are manufactured
and kept for sale.   After introducing evidence tending to
show that defendant disaffirmed and repudiated the
contract, the plaintiff rested her case, and thereafter
defendant's counsel requested the court to instruct the
jury to return a verdict for the defendant upon the
ground that the contract was incomplete, uncertain, and
void under the statute of frauds.   The court directed ver-
dict for defendant upon that ground.   On the trial it was
shown that, after the inventory was completed, plaintiff
wrote defendant to that effect, advising him of the footing
of the invoice, told him where to find the key, and de-
manded from him the property, etc., which she was
to receive, and a few days afterwards again made formal
demand upon him for performance of the contract, which
was refused.

There is no uncertainty as to the undamaged goods.
They were to be inventoried at wholesale cost prices.
The damaged goods, by the terms of the contract, were
to be inventoried at "prices agreed upon;" and counsel
for plaintiff contend that the parties themselves interpreted
these words as the prices to be fixed by Mr. Hurd and
Mr. Watrous; that the contract does not mean prices
thereafter agreed upon by the parties, because neither of
them had anything to do with the invoice, and that it
must mean an amount fixed upon by Hurd and Watrous;
that by this interpretation the contract was rendered
complete.   As counsel put it:

"To be sure, the price of each separate article was not
then, when the contract was signed, agreed to, but the
standard was agreed to, and the defendant was to pay
'the prices to be fixed by third persons.'   These third per-
sons were selected, the invoice begun, and presumably
about one-sixth completed, when defendant attempted to

back out; but still the third persons went on, and fixed the prices. When this contract was signed, and the person or persons who were to fix the prices selected, and the work actually begun, the contract was as complete as though the referees or arbitrators were named in the instrument, or as though the contract read, 'at prices to be fixed by D. C. Hurd and G. W. Watrous.'"

We are satisfied that the contract cannot have this interpretation. There is nothing in it providing who shall take the inventory, or that, when the inventory was taken, the parties were to be bound by the prices fixed by those who put the value upon the damaged goods, and there is nothing in the record showing that Hurd and Watrous were made the arbitrators irrevocably to determine what were damaged goods and their value; and we think the words, "the damaged goods at prices agreed upon," when taken in connection with the other parts of the contract, mean that the inventory was to be taken of these goods with the others, and that then or thereafter the prices of the damaged goods were to be fixed and determined. This interpretation leaves the contract uncertain and incomplete, and not one which can be enforced against the defendant. The parties themselves have failed to agree upon the essential terms, and it is evident that the minds of the parties never met upon the value of these damaged goods. The case falls within that class of cases cited by counsel for defendant in their brief, viz.: *Gates* v. *Gamble*, 53 Mich. 181; *Wardell* v. *Williams*, 62 Mich. 50 (4 Am. St. Rep. 814); *Gault* v. *Stormont*, 51 Mich. 636.

The judgment below must be affirmed.

The other Justices concurred.