CAMPBELL  v.  DAVIDSON-MARTIN  MANUFACTURING  CO.

CONTRACTS—EVIDENCE—APPEAL.

> There being testimony to support plaintiff's claim of the making of a contract whereby he was to manufacture certain machines for defendant, and defendant's breach thereof, a judgment for plaintiff was affirmed.

Error to St. Clair; Vance, J.   Submitted January 11, 1901.   Decided May 7, 1901.

*Assumpsit* by Robert Campbell against the Davidson-Martin Manufacturing Company for the breach of a contract to purchase certain machines.   From a judgment for plaintiff, defendant brings error.   Affirmed.

*John B. McIlwain* and *A. E. Chadwick*, for appellant.

*Law & Moore*, for appellee.

MOORE, J.   The plaintiff recovered a judgment against the defendant for $1,210.   The defendant has brought the case here by writ of error.   I cannot state the questions involved in the case better than to quote from the language of the trial judge, the late Judge Vance, in his charge to the jury, which is as follows:

"The plaintiff claims that on or about April 6, 1894, the defendant, through its president, A. S. Martin, gave the plaintiff an order to manufacture for it twelve 15-inch Wizard purifiers of whitewood; that the defendant gave plaintiff about the same time an order to manufacture five small machines for agents' samples; that no written contract or specifications were made, but that plaintiff had a model machine to work from on these orders, furnished by the defendant; that plaintiff made the above machines, and finished these orders some time in June, 1894.

"That during the month of April, 1894, or early in May, 1894, meetings of the directors of the defendant

company were held, and the matter of using elm in the manufacture of these machines was talked over, and that at one or more of these meetings plaintiff was present; that one Webster advocated the use of elm at one of these meetings, and that the defendant ordered plaintiff to make a 24-inch elm machine; that plaintiff began work on this machine prior to May 14, 1894, and that said machine was set up by Charles Keyes, and was completed, or nearly completed, so far as the woodwork was concerned, on May 25, 1894, and that at that date it stood on the second floor of plaintiff's factory. This is the high 24-inch machine spoken of in plaintiff's declaration. The officers and directors of defendant saw this machine, and approved it, prior to May 25, 1894. That on May 25, 1894, Abram S. Martin, the president of the defendant company, came to plaintiff's office, and gave plaintiff an order for fifty 15-inch, forty 24-inch, and ten 30-inch elm machines; and one Wallace was present. They all examined the 24-inch sample machine then on the floor of the factory. The new machines to be manufactured under the order were to be like the 24-inch sample in timber and workmanship, but the new 24-inch machines were to be about four inches lower. That the plaintiff immediately caused the order to be entered in his book, and proceeded to purchase elm lumber, as he did not have enough in his factory to fill the order. He at once proceeded to cut up lumber for the order, as A. S. Martin had said to him the defendant was in a hurry for the machines.

"That on June 6, 1894, the board of directors of the defendant company held a meeting, at which plaintiff was present, and an attempt was made to embody in writing, specifications and in a written contract, the agreement made with the president, A. S. Martin, on May 25, 1894. This attempt failed for the reason that plaintiff objected to some of the details of specifications as too stringent. That at this time the officers and directors present ratified the contract entered into with the president, Abram S. Martin, on May 25, 1894, and supplemented it with the further provision that plaintiff should complete one 24-inch machine of the lower design, being one of the order of May 25, 1894, which was well under way on June 6, 1894, and that this machine should stand on the floor of plaintiff's factory as a model as to finish and minor details, but that plaintiff should finish work on

the whole order as he had done between May 25, 1894, and June 6, 1894.

"The plaintiff claims that after May 25, 1894, and after he had begun work on the order of that date, the different officers and directors of the defendant were constantly coming to the factory and watching the progress of the work on the order; that David J. Davidson personally supervised the work, and was there once or more every day; that other officers and directors gave orders about the work, and that on June 6, 1894, they were all aware of the work he had been doing on this order; that plaintiff proceeded with the work during the months of June and July, 1894, and that it was supervised and overlooked nearly every day by the officers and directors of the defendant; that defendant agreed to furnish ironwork, as plaintiff did not want to furnish money, and wait for them to take the machines, and the defendant did furnish ironwork for three machines; that on July 19, 1894, the defendant accepted two 24-inch elm machines, one of which went to Davison, Michigan, and one to McMorran's mill, in this city; that on August 24th the defendant accepted a 15-inch elm machine, shipped to Metzgar, at Waterfield, Ohio.

"That on or about August 24, 1894, the defendant repudiated this contract with plaintiff, through its president, Abram S. Martin, and ordered plaintiff to cease making machines under the order, as they had found elm to be unsuitable, and would take no more machines; that on February 19, 1895, the defendant paid $92.02 on this account of machines which plaintiff had in progress of manufacture at his factory, by allowing him to take a lot of lumber which was worth this amount; that negotiations have been had at different times for a settlement of the claim sued upon. On April 25, 1895, the plaintiff attended a meeting of the directors of the defendant, and they then and there directed him to furnish them with a list of the machines in progress of manufacture at his factory, and that the defendant would furnish irons, and have him complete the machines, and take and pay for them under the contract. That plaintiff furnished such lists, but defendant never furnished irons as it had agreed to do, and he claims to recover upon that theory of the case.

"The defendant claims as its theory of the case as follows: That it never made any such contract as is claimed

by the plaintiff; that, about the 28th day of May, defendant's president, A. S. Martin, went to plaintiff's mill to obtain prices from plaintiff of what he would manufacture whitewood purifiers of different sizes for; that said Martin obtained plaintiff's prices on the basis of an order for 100 whitewood machines; that it was understood at that time by Mr. Campbell and Mr. Martin and Mr. Chadwick, who were present, that a written contract, with complete specifications, was to be prepared, agreed to, and signed by the parties, before there would be any contract between them; that the terms and conditions of said contract would have to be approved by the board of directors of the defendant company; and that Mr. Chadwick was then and there requested to proceed with the preparation of the contract and specifications; that said contract and specifications were prepared in writing, and a meeting of the board of directors called on or about the 1st of June, 1894, at which Mr. Campbell was present; that the object and purpose of the meeting was to see if a satisfactory contract could be made with Mr. Campbell for the manufacture of whitewood machines on the line of the prices obtained from him; that defendant did not desire to bind itself to take 100 machines in any one order, but desired the right to elect to take a less number; that the parties failed to agree upon the terms of the contract and specifications for the building of whitewood machines, and Mr. Campbell then suggested that the cost of the machine could be cheapened if built out of elm, which, he assured the board of directors, would be entirely suitable if the first quality of elm was used, and properly kiln-dried, and, in support of the suitability of elm, drew the attention of the directors to the back of an elm chair then in the office, which he claimed was made out of elm; that, for the purpose of testing the suitability of elm, it was then agreed that plaintiff should go on and build three elm machines, one of each size; that they were to be built according to the directions and to the complete satisfaction of David J. Davidson, the inventor of said machines, and that if, after being so completed and tested, elm lumber was found suitable for the construction of those machines, and the machines were so constructed as to make them durable, and perform the work for which they were intended, and if in all things they were built to the satisfaction of Mr. Davidson, then said machines would stand as models as to style, work-

manship, and material for any orders that might subsequently be given plaintiff for the construction of the machines; that that was the sole and only order given by the board of directors to plaintiff, and the only agreement reached between the parties; that plaintiff had no authority from defendant to cut up any material for any other machines than the three elm machines that defendant had agreed to take whether they were found suitable or not.

"That, before the models were completed, the directors learned the plaintiff was cutting up more elm than was necessary for the construction of the three elm machines as agreed upon, and the defendant's president, upon learning the same, and after an informal meeting of the board of directors, went to plaintiff's mill, and inquired by what authority he was cutting up more material than was necessary for the construction of the three elm machines which he had been ordered to build; that plaintiff did not, at that time, claim that he had any order from defendant's president to cut up said material, or to build any more machines but the three, but claimed he got the order from Mr. Davidson, which Mr. Davidson, on learning of the same, promptly denied; that a meeting of the board of directors was called within a few days, at which Mr. Campbell was present, and Mr. Davidson notified the plaintiff and defendant's board of directors that elm lumber was entirely unsuitable for the building of said machines; that they would not hold up under it; that the thickness of the material which Mr. Campbell was using was insufficient, and would not make the machines durable; that his directions were that the machines should be built flush inside, while they were not being so built; that the workmanship was not satisfactory; that he could not and would not accept any of said machines if completed. That the plaintiff made no claim at this meeting of the board of directors that he had any order to cut up the material by the authority of the defendant, or by the authority of anybody, but that he thought the machines would be entirely satisfactory, and, by cutting up a lot of material at the same time he cut up the material for the three machines, he could save labor and expense to himself; that the decision of Mr. Davidson was accepted and acquiesced in by both parties as final; that the plaintiff was then informed by the board of directors that they had agreed to take three machines of him, one of each size, and to go on and finish up three machines, substituting the high 24-inch

machine for the 30-inch, and they were to take them. The plaintiff did subsequently finish up the three machines, and defendant furnished the ironwork for the same, and, after he had completed said machines, the defendant took them under said agreement to take three machines. The plaintiff, on August 30, 1894, rendered a bill to the defendant for all his work and labor done and indebtedness due from the defendant to him up to that time, which defendant paid, and plaintiff thereupon balanced up his books in full with the defendant. That, at the time defendant paid said bill of August 30th, it had no knowledge that Mr. Campbell was making any claim, or going to make any claim, for any elm material now claimed to have been cut up by him previous to that time, and that, when bills were subsequently rendered, they were repudiated by the defendant."

The testimony offered in support of these claims was as contradictory as it could well be. The defendant asked for the submission of special findings, which, with the answers returned thereto by the jurors, were as follows:

"Was there a partly finished elm machine set up on the floor of plaintiff's mill, and shown to defendant's president, A. S. Martin, on the 25th day of May, 1894?
"*A.* Yes.

"Was it understood between plaintiff and A. S. Martin, at the time the figures were made on May 25, 1894, as alleged by plaintiff, that a written contract with complete specifications should be prepared, and signed by the parties, before there would be any binding contract between them?
"*A.* No.

"Was there any other agreement made between the plaintiff and defendant's board of directors at the alleged meeting of June 6th than that plaintiff should build for the defendant, at its expense and risk, one or three elm model machines according to the direction of defendant's expert, David J. Davidson, and to his satisfaction, acceptance, and approval, which, when so completed, accepted, and approved, should be a model or pattern for any other machines built by the plaintiff for the defendant?
"*A.* Yes.

"Did David J. Davidson notify the plaintiff and defendant's board of directors, at a meeting of the latter, at

which Campbell was present, before the models were completed, that they were entirely unsatisfactory to him in workmanship and material, and he would not accept them?

"*A.* No.

"Did the defendant order plaintiff to cut up any material, or complete any machines other than said models, after the 6th day of June, 1894?

"*A.* No."

The defendant then moved for a new trial, assigning many reasons therefor. The judge filed a written opinion of very considerable length, overruling the motion.

The defendant contends there is a fatal variance between the contract counted on and plaintiff's proofs, and that is a question of law for the court, and not one of fact for the jury; citing *Kroll* v. *Ten Eyck*, 48 Mich. 230 (12 N. W. 164); *Martin* v. *Boyce*, 49 Mich. 122 (13 N. W. 386); *Reynolds* v. *Reeder*, 104 Mich. 265 (62 N. W. 355). Under this contention counsel quote from the testimony at great length; but we cannot reach the same conclusion arrived at by them. On the other hand, we think the testimony offered on the part of the plaintiff, if believed by the jury, sustains the cause of action as stated in the declaration.

The defendant contends there is an entire failure of proof, under plaintiff's own testimony, to establish either the contract declared on or any completed contract with defendant for the labor and material involved in this suit, and the court erred in submitting the question to the jury to find—*First*, whether there was a completed contract with Martin on May 25th; and, *second*, whether it was ratified by the defendant on June 6th. The testimony upon this branch of the case was conflicting. We cannot agree at all with counsel that there was an entire failure of testimony tending to prove a contract. Both branches of that feature of the case were carefully submitted to the jury, who found in favor of the plaintiff, and, in view of the testimony, we think it was the duty of the trial judge to submit the question to them.

It is insisted:

"The plaintiff's testimony clearly shows there was no meeting of the minds of the parties on anything more than to build the model or. models.   The rest of the talk and negotiations is too uncertain and incomplete to be enforced as a contract against the defendant.   No such contract as claimed could be enforced by defendant against the plaintiff. The case is within the rules laid down in the following cases: *Dayton* v. *Stone*, 111 Mich. 196 (69 N. W. 515); *Gates* v. *Gamble*, 53 Mich. 181 (18 N. W. 631); *Wardell* v. *Williams*, 62 Mich. 50 (28 N. W. 796, 4 Am. St. Rep. 814); *Gault* v. *Stormont*, 51 Mich. 636 (17 N. W. 214); *Peek* v. *Novelty Works*, 29 Mich. 313."

If isolated portions of the testimony of the plaintiff are taken, such a conclusion as stated above can be reached; but, if all the testimony offered by the plaintiff is taken into consideration, it will lead to quite a different conclusion.

Defendant contends:

"There is no reliable basis afforded by plaintiff's proofs upon which to find damages, and, in any event, the verdict is greatly excessive.   The law is well settled that, before plaintiff is entitled to recover damages, he must prove his damages.   In a case of this kind there ought not to be very great difficulty in proving the amount of labor done and material cut up in whatever work plaintiff has done,"—citing *Meyers* v. *McQueen*, 85 Mich. 161 (48 N. W. 553).

This again raises the question of the effect of the testimony which was given upon that branch of the case.   If the jury believed the testimony offered by the plaintiff,— as they evidently did,—it cannot be said there was no basis for their verdict.   It was well within the range of the testimony offered by the plaintiff.   *Balch* v. *Railroad Co.*, 78 Mich. 654 (44 N. W. 151).

We do not deem it necessary to refer to the other assignments of error further than to say we do not think they are well taken.

Judgment is affirmed.

Montgomery, C. J., Long and Grant, JJ., concurred.   Hooker, J., did not sit.