Argued March 28, reversed and remanded April 10, rehearing denied June 19, 1917.

## HOLTZ *v.* OLDS.*

### (164 Pac. 583; 164 Pac. 1184.)

**Contracts—Agreement to Purchase Stock—Condition Precedent—Breach.**

1. Under a contract to purchase from defendants all corporate stock owned by them, "to be issued as hereinafter set out," agreement by defendants therein to make inventory of goods of corporation according to terms, *held* a covenant and condition precedent to payment, breach of which entitled plaintiffs to recover money deposited with defendants.

**Contracts—Agreement to Make Supplemental Agreement—Meeting of Minds.**

2. An agreement to purchase stock providing that purchasers will execute a supplemental agreement satisfactory to sellers guaranteeing

---

*Authorities discussing the question of effect on contract of leaving price indefinite are collated in a note in 53 L. R. A. 288. REPORTER.

purchase, and that buyers and said guarantor on said agreement will deposit satisfactory security to be hereafter determined, is void for uncertainty, in that it fails to specify amount of security.

**Contracts—Agreement to Make Contract in Future—Effect.**

3. An agreement to make a contract in the future is not binding, unless all the terms and conditions are agreed upon, and nothing left to future negotiations.

[As to reference by contracting parties to future contract in writing as negativing existence of present contract, see note in Ann. Cas. 1912B, 130.]

### ON PETITION FOR REHEARING.

**Interest—Absence of Contract—Statute.**

4. In the absence of a contract to pay interest, the right to exact it must be found in the statute.

**Interest—Accrual of Right—Nature of Liability.**

5. Under Section 6028, L. O. L., providing that the rate of interest shall be 6 per cent "on money received to the use of another and retained beyond a reasonable time without the consent of another," etc., plaintiffs were not entitled to interest from date of deposit on money deposited with defendants as security for the purchase of stock under a contract void for uncertainty and recovered by plaintiffs in an action for money had and received, which was honestly litigated by defendants.

**Interest—Statutes—Construction.**

6. As interest statutes are in derogation of the common law, they must be strictly construed.

From Multnomah: THOMAS J. CLEETON, Judge.

This is an action by Max Holtz and Aaron Holtz against William P. Olds, Hardy C. Wortman and Charles W. King. From a judgment for defendants, plaintiffs appealed. Reversed and remanded, with directions.

Department 1. Statement by MR. JUSTICE BURNETT.

Mentioned in this litigation is a corporation called Olds, Wortman & King. For convenience it will be styled the corporation. The individual defendants are William P. Olds, Hardy C. Wortman and Charles W. King who will be spoken of either as the defendants or by their individual surnames. The dispute between the parties arises out of a contract in writing dated

March 11, 1911, between the plaintiffs as parties of the second part and the defendants as parties of the first part, the execution of which is admitted. The corporation is a large and well-known mercantile concern in Portland. The writing recites:

"That for and in consideration of the sum of One Dollar ($1.00) paid by the parties of the second part to the parties of the first part, receipt whereof is hereby acknowledged, the parties of the first part do hereby agree to sell, assign, transfer and set over unto the parties of the second part one third of the capital stock * * of the corporation * * to be issued as hereinafter set out, owned and controlled by them, and further agree to keep and perform such other agreements and acts as are herein set out."

Provisions are then made in the instrument for an accurate inventory by the defendants of the stock of goods owned by the corporation as of July 15, 1911, the value of which was to be determined by the cost price thereof, varied by certain factors not important here. The liabilities of the concern were to be deducted and the remainder was to constitute the basis for preferred stock afterwards to be issued according to a plan formulated by the contract for an increase of the capital stock of the corporation. The instrument then provides that upon a satisfactory showing on or before July 15, 1911, the date set for the transfer of the property, that the plaintiffs had deposited in a national or state bank in Portland, approved by the defendants, a sufficient amount of cash or New York exchange in escrow to be paid or delivered to the defendants as the first payment required by the stipulation, "then and in that case" the parties of the first part would cause the stock of the corporation to be increased to $4,000,-000, divided into 40,000 shares of $100 each, of which $1,700,000 more or less divided into 17,000 shares more

or less of $100 each should be preferred stock, it being the intention to authorize and issue preferred stock for approximately $200,000 in excess of the net value of the assets of the corporation. After providing details of the preference of that species of stock the defendants covenanted that they would cause the corporation to issue the same to its stockholders in an amount equal to the net value of the tangible assets of the concern as determined by the rules specified in the contract and that their common stock should be retired. Then follow these clauses:

"It is further mutually understood and agreed by and between the parties hereto that after such capital stock shall be issued to the present stockholders in an amount equal to the net value of the tangible assets determined as herein provided, that the parties of the first part for the consideration herein expressed, agree to sell, and for the same considerations the parties of the second part agree to buy one third of the total number of shares of the preferred stock held by the parties of the first part, and agree to pay for the same in cash or New York exchange acceptable to the parties of the first part on or before July 15, 1911, at One Hundred Dollars ($100.00) per share, and upon such payment the parties of the first part will cause to have delivered to the parties of the second part certificates representing one third of their holdings of preferred stock properly endorsed according to the by-laws of Olds, Wortman & King.

"It is further mutually understood and agreed that the parties of the second part do agree to and with the parties of the first part and each of them, that on or before the 15th day of July 1921, they will purchase from said William P. Olds, Hardy C. Wortman and Charles W. King, their heirs, executors, administrators or assigns, such preferred stock of the corporation of Olds, Wortman & King as may be in the hands of said parties, or either of them, and further agree that they will pay for the same at the rate of One Hundred

and Ten Dollars ($110.00) per share, with all accrued dividends to date of purchase.

"The parties of the second part hereby agree that they will cause to be made, executed and delivered to the parties of the first part a supplemental agreement, satisfactory to the parties of the first part, guaranteeing to the parties of the first part that the original issue of preferred stock held by them will be on or before the 15th day of July, 1921, purchased by the parties of the second part hereto, as herein agreed, and the parties of the second part and said guarantors on said collateral agreement will also deposit with the parties of the first part collateral security of a kind and character satisfactory to the parties of the first part, but to be hereafter determined."

There are numerous other conditions in the instrument relating to stock in another concern held by the defendants, which are not material to the decision of this case. Near the end of the document appears this provision:

"It is further mutually understood and agreed by and between the parties hereto that the parties of the second part have this day deposited with the parties of the first part cash or approved securities to the amount of Twenty Thousand Dollars ($20,000.00), which cash and approved securities of the value thereof up to the amount of Twenty Thousand Dollars ($20,-000.00) shall be forfeited to the parties of the first part as stipulated damages in the event the parties of the second part shall fail to complete their purchase of one third (1–3) of the preferred stock to be issued as provided hereunder on or before the 15th day of July, 1911, and in the event the said purchase of one third (1–3) of the preferred stock shall be so completed the cash this day so deposited shall apply on account of the purchase price thereof, and in that event the parties of the first part shall allow to the parties of the second part interest on the cash deposited from the date of deposit to the date of the consummation of this agreement at the rate of four (4) per cent per annum."

The substance of the complaint is that the contract was executed, which is admitted by the defendants; and that contemporaneously therewith the plaintiffs deposited with the defendants money and approved securities to the amount of $20,000 to be applied upon the cash payment agreed to be made for the purchase of one third of the preferred stock of the corporation. The deposit itself is admitted. The plaintiffs then say in substance that they were ready, able and willing to complete the purchase of one third of the preferred stock, as stated in the contract, and exhibited to the defendants evidence of that ability; that the "defendants did not require the actual deposit of said sum in cash as a prerequisite for the increase of said preferred stock," but that after prolonged negotiations they and the plaintiffs were unable to agree upon the security contemplated to insure the purchase of the remaining two thirds of the defendants' holdings of preferred stock on or before July 15, 1921, in consequence of which the plaintiffs demanded from the defendants the return of the $20,000 deposited, which was refused. Judgment is demanded for that sum with interest from July 15, 1911.

It is admitted that the defendants refused to return the deposit, but otherwise, except as hereinbefore stated, the complaint was traversed. The answer states a supplemental agreement made March 17, 1911, admitted by the plaintiffs, reciting the contract already mentioned, and providing that the common stock to be issued to the extent of $2,300,000 more or less on the increase of the capital stock of the corporation, should be transferred to the plaintiffs and that upon the consummation of the agreement of March 11, 1911, Olds, Wortman and King would in succession resign as directors of the corporation to be succeeded by a direc-

torate satisfactory to the plaintiffs. The answer
further proceeds substantially to allege the construc-
tion placed by the defendants on the original contract
and to impute a default upon the plaintiffs in that they
refused to carry into effect that portion of the stipu-
lation above quoted providing for the execution of a
supplemental agreement guaranteeing the purchase of
the original issue of preferred stock still held by the
defendants on or before July 15, 1921, and to furnish
collateral security as already mentioned. The answer
is traversed by the reply. At the conclusion of all
the testimony the plaintiffs moved for a directed ver-
dict in their favor for detailed reasons which will be
discussed more fully hereafter, which motion was over-
ruled. After being instructed by the court the jury
returned a verdict for the defendants. The plaintiffs
appealed from the ensuing judgment.

REVERSED AND REMANDED WITH DIRECTIONS.

For appellants there was a brief over the name of
*Messrs. Beach, Simon & Nelson,* with an oral argument
by *Mr. R. C. Nelson.*

For respondents there was a brief over the names of
*Messrs. Reed & Bell, Mr. C. W. Fulton* and *Mr. T. M.
Dye,* with an oral argument by *Mr. Chriss A. Bell.*

MR. JUSTICE BURNETT delivered the opinion of the
court.

The plaintiffs assign as errors: (1) The judgment was
erroneous because the facts stated in the answers are
not sufficient to constitute a defense; and (2) the court
erred in overruling their motion for a directed verdict.
The principal ground for this motion was that the con-
tracts, the execution of which is admitted, are void for

uncertainty in that the nature of the security mentioned was left open for future determination.

There is but little dispute, if any, about the substantial facts of the case. It appears that after signing the contract the plaintiff Max Holtz went to New York to arrange for funds with which to carry out the contract and returned to Portland some time in June, 1911. Negotiations were then taken up between the parties on the subject of security for the subsequent purchase of the remainder of the defendants' preferred stock yet to be issued, but they were unable to agree on that feature and after protracted discussions, covering some ten days, all further proceedings were abandoned and later on this action was commenced.

1. It is disclosed by the testimony that aside from the deposit by the plaintiffs with the defendants of $20,000, nothing was done by either party about performance of the contract after its execution, except to engage in fruitless discussions about the collateral designed to guarantee the purchase of the remainder of the preferred stock held by the defendants prior to July 15, 1921. It was the evident intention of the parties that the plaintiffs should purchase all the holdings of the defendants in the preferred stock of the concern yet to be issued. In order to arrive at the basis upon which that stock should be called into existence it was necessary to take an inventory of the property of the concern, value it according to rules laid down in the stipulation and lastly deduct therefrom the liabilities of the firm. This duty rested upon the defendants and was to be performed before the plaintiffs were required to make the first payment. We note that this was what was required to be paid for the one third of the holdings of the defendants in the preferred stock. Making the inventory was necessarily a condition

precedent because without it there was no basis within the contemplation of the contract upon which the amount of preferred stock could be calculated. The obligation imposed upon the plaintiffs to deposit the purchase price of one third thereof in escrow was not required to be performed until the inventory had been taken and the net value of the assets ascertained.

The next step in the process of performance of the contract would have been to augment the stock and to deliver the preferred part thereof to the stockholders of the corporation, for it is said in the contract, after speaking of the deposit to be made in escrow, that "then and in that case the parties of the first part" will increase the capital stock and distribute the same among the stockholders. The next in order of time was the purchase of a third of what was owned by the defendants, for we find in the contract "that after such capital stock shall be issued to the present stockholders" the defendants agreed to sell and the plaintiffs to buy that portion of the total number of shares of preferred stock held by the defendants and to pay for the same in cash or New York exchange on or before July 15, 1911. If we should consider the agreement as solely for the purchase of one third of the stock, the defendants were clearly in default in performance of their part of the contract for, after the execution thereof, the first thing to be done by them was the making of the inventory which they utterly failed to perform. The principle is well settled that where something is to be done by the first party before the other is called upon to act it is an independent covenant to be performed before that other can be said to be in default: *Couch* v. *Ingersoll*, 2 Pick. 292; *Dey* v. *Dox*, 9 Wend. 129 (24 Am. Dec. 137) ; *State* v. *Winona etc. R. R. Co.*, 21 Minn. 472; *Mill Dam Foundry Co.* v.

*Hovey,* 21 Pick. 417; *Standard Gas Light Co.* v. *Wood,* 61 Fed. 74 (9 C. C. A. 362). The plaintiffs are entitled to consider the failure of the defendants to perform their part of the contract at the time and in the order required thereby as a breach of the covenant upon which an action will lie in favor of the plaintiffs to recover the money deposited.

2. But further, as stated, if anything is plain in the contract it is that all parties intended that it should culminate in the purchase by the plaintiffs of all the holdings of the defendants of the preferred stock yet to be issued by the corporation at the latter's behest. Confessedly, by the testimony on behalf of the defendants, the rock upon which the scheme perished was the stipulation about the security to be posted guaranteeing the purchase of the remainder of their holdings on or before July 15, 1921. This was an integral part of the contract but it is plain that the writing leaves a wide gap between mere negotiations of the parties and the actual formation of the contract as to that feature. The language used in that respect contemplates that there shall be guarantors accompanying the plaintiffs in the execution of what is there called a supplemental agreement. These underwriters are not specified by name or qualification and unknown though they were, the document required them to deposit collateral security of a "kind and character satisfactory to the parties of the first part but to be hereafter determined."

Passing the question of whether a stipulation for satisfactory security is sufficiently definite to be binding, we note that there is not a hint about the amount of such security. Indeed, the quantity thereof could not be well specified in advance, because at that time the net value of the assets of the corporation to be ascer-

tained by the procedure laid down in the contract was yet unknown and consequent upon that fact was the circumstance that the amount of preferred stock of the concern was not yet determined, and still further, it was not disclosed what amount thereof would be apportioned to the individual defendants. With all these factors in mind it is plain why the amount of collateral required by the terms of the guaranteeing contract could not be stated beforehand under the other terms of the agreement as written. That provision is therefore void for uncertainty.

3. In *St. Louis & S. F. R. R. Co.* v. *Gorman,* 79 Kan. 643 (100 Pac. 647, 28 L. R. A. (N. S.) 637), it was held that an agreement to make a contract in the future is not binding unless all the terms and conditions are agreed upon and nothing is left for future negotiations. In *Butler* v. *Kemmerer,* 218 Pa. 242 (67 Atl. 332), it was held that an agreement must contain all the terms necessary to determine whether the contract had been performed or not; that price is as essential as any other of the terms of the stipulation and that without this agreed upon no contract exists. In the *United Press* v. *N. Y. Press Co.,* 164 N. Y. 406, 412 (28 N. E. 527, 529, 53 L. R. A. 288), Mr. Justice GRAY speaking for the court said:

"I entertain no doubt that, where work has been done, or articles have been furnished, a recovery may be based upon *quantum meruit* or *quantum valebant;* but, where a contract is of an executory character and requires performance over a future period of time, as here, and it is silent as to the price which is to be paid to the plaintiff during its term, I do not think that it possesses binding force. As the parties had omitted to make the price a subject of covenant, in the nature of things, it would have to be the subject of future agreement, or stipulation, and, to use the language of

84 Or.—37

the opinion in *Buckmaster* v. *Consumers' Ice Co.,* 5 Daly, 313, if the price each week was to be by future agreement, the contract was not legally binding on either party, as neither could be compelled to agree with the other.''

Other precedents pertinent to this point are *Shepard* v. *Carpenter,* 54 Minn. 153 (55 N. W. 906); *Sibley* v. *Felton,* 156 Mass. 273 (31 N. E. 10); *Foot* v. *Webb,* 59 Barb. (N. Y.) 38; *Dayton* v. *Stone,* 111 Mich. 196 (69 N. W. 515); *Gaines* v. *Vandecar,* 59 Or. 187 (115 Pac. 721, 1122); *Jackson* v. *Alpha Portland Cement Co.,* 106 N. Y. Supp. 1052; *Somers* v. *Musolf,* 86 Ark. 97 (109 S. W. 1173); *Edmondson* v. *Fort,* 75 N. C. 404. As stated in Clark on Contracts (3 ed.), p. 52:

''An agreement to be finally settled must comprise all the terms which the parties intend to introduce into the agreement. An agreement to enter into an agreement upon terms to be afterwards settled between the parties is a contradiction in terms. It is absurd to say that a man enters into an agreement till the terms of that agreement are settled.''

It is indeed competent for parties to enter into a preliminary agreement looking to the execution of a consequent one in the future. We have daily examples of that kind in bonds for deeds or in contracts for insurance, the policies of which are yet to be issued. But in all cases the minds of the parties must meet on the terms not only of the present convention, but also as to those of the covenants yet to be executed. If this rule be not observed in the stipulation and a substantial part is left open for further settlement without a canon by which the subsequent negotiations may be controlled there is no *aggregatio mentium* so essential to every contract. Tested by this standard, under the authorities cited, the admitted document was void for

uncertainty in a material particular and was devoid of obligatory force upon the parties. Under these circumstances, independent of the default of the defendants in failing to make the inventory mentioned, the plaintiffs were entitled to disregard the terms of the document and to recover the money they had deposited with the defendants. The Circuit Court should have directed a verdict in favor of the plaintiffs for $20,000 and rendered judgment thereon. Under the doctrine of *Sargent* v. *Am. Bank & Trust Co.,* 80 Or. 16, 38 (156 Pac. 431), and *Carnahan Mfg. Co.* v. *Beebe-Bowles Co.,* 80 Or. 124 (156 Pac. 584), the plaintiffs are not entitled to recover interest on the deposit. The judgment of the Circuit Court will therefore be reversed and the cause remanded with directions to enter a judgment for the plaintiffs against the defendants for $20,000, together with the costs and disbursements of both courts.

REVERSED AND REMANDED WITH DIRECTIONS.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.

Denied June 19, 1917.

ON PETITION FOR REHEARING.

(164 Pac. 1184.)

Petition for rehearing. Rehearing denied.

*Messrs. Reed & Bell, Mr. Charles W. Fulton* and *Mr. T. M. Dye,* for the petition.

*Messrs. Beach, Simon & Nelson, contra.*

Department 1. MR. JUSTICE HARRIS delivered the opinion of the court.

The original opinion awarded the plaintiffs a judgment for $20,000 without interest. The plaintiffs insist that they are entitled to interest on $20,000 from July 15, 1911.

The defendants honestly and in good faith denied and litigated the right of plaintiffs to recover; and therefore if the rule announced in *Baker County* v. *Huntington*, 48 Or. 593, 603 (87 Pac. 1036, 89 Pac. 1044), is adhered to, it would prevent the allowance of interest. There is, however, a more persuasive reason for disallowing interest.

4–6. In the absence of a contract to pay interest the right to exact it must be found in the statutes. *Sorenson* v. *Oregon Power Co.*, 47 Or. 24, 34 (82 Pac. 10). Before the plaintiffs can successfully claim the allowance of interest they must show that they come within the terms of Section 6028, L. O. L., as it read prior to the amendment found in Chapter 358, Laws 1917. The plaintiffs have not brought themselves within any clause of Section 6028, L. O. L., as that statute is interpreted by *Sargent* v. *American Bank and Trust Co.*, 80 Or. 16, 42 (154 Pac. 759, 156 Pac. 431), unless they are within the clause which allows interest "on money received to the use of another, and retained beyond a reasonable time, without the owner's consent, expressed, or implied"; and, hence, we must first determine the meaning of the quoted clause before we can know whether it is available to the plaintiffs. Interest statutes are in derogation of the common law and for that reason must be strictly construed: 22 Cyc. 1481. The action prosecuted by the plaintiffs assumed the form of the "equitable action" commonly designated as an action for money had and received. The basis

of the claim of the plaintiffs was that the defendants had $20,000 which in justice and good conscience ought to be paid to the plaintiffs; and it was upon this theory that the judgment was rendered against the defendants: *Hoyt* v. *Paw Paw Grape Juice Co.,* 158 Mich. 619 (123 N. W. 529); *Todd* v. *Bettingen,* 109 Minn. 493 (124 N. Y. 443); *Ulbrand* v. *Bennett,* 83 Or. 557 (163 Pac. 445, 446); 27 Cyc. 854. Applying the rule of strict construction the language of the clause quoted from Section 6028 is not sufficiently comprehensive to include the instant case. If A pays money to B to be given to C, the money has been received by B to the use of C. From the moment of the payment to B the money belongs to C and not to B, for it was in fact received for the use of C and at no time is B the owner of the money. Interest can be allowed only when two elements combine: (1) The money must be received to the use of another; and (2) it must be retained beyond a reasonable time without the owner's consent. When the statute speaks of money received to the use of another it means money which in fact is received to the use of another; it does not include money which, by the aid of a legal fiction interposed after the actual receipt of the money, is treated as money received to the use of another; it means money that *is* received to the use of another as distinguished from money which is merely regarded *as* money received to the use of another. That this interpretation is not unduly narrow is confirmed by the words "and retained beyond a reasonable time, without the owner's consent." The statute contemplates that the person who actually has the money is at no time the owner, but he has only received the money to the use of another who is in truth the owner during all the time. When the statute speaks of the consent of the owner it necessarily signi-

fies that some person other than the holder of the money is in fact, and not by reason of a fiction, the owner. While the conclusions expressed in *Graham* v. *Merchant,* 43 Or. 294, 311 (72 Pac. 1088), have neither been overlooked nor ignored, nevertheless, a strict construction of the interest statute will not permit the plaintiffs to recover interest. The petition is denied.

REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.

---

'Argued May 24, reversed June 19, 1917.