Argued October 11, affirmed as modified December 21, 1972

# INVESTORS INSURANCE CORPORATION, Respondent-Cross-Appellant, v. DIETZ, Appellant-Cross-Respondent.

504 P2d 742

*Morton A. Winkel,* Portland, argued the cause and submitted the briefs for appellant.

*Douglas M. Ragen,* Portland, argued the cause for respondent. With him on the briefs were Miller, Anderson, Nash, Yerke & Wiener, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE,* HOWELL and BRYSON, Justices.

HOWELL, J.

This is an action by plaintiff, a credit insurance carrier, against its agent, the defendant, to recover premiums on policies sold by defendant. The action was tried by the court without a jury, and findings and judgment were entered in favor of plaintiff. Defendant appeals.

In 1967 defendant and one other individual were the major stockholders in Select Insurance Plans, Inc. Plaintiff was engaged in the business of selling credit life and health and accident policies. Insurance sales

---

* Tongue, J., did not participate in this decision.

were made primarily through auto dealers selling cars to purchasers on credit. Plaintiff and defendant entered into an agency contract whereby defendant agreed to sell plaintiff's insurance to dealers. The contract was signed by defendant as "Gerald B. Dietz, Select Insurance Plans, Incorporated." In April 1970 a new agreement changing commission and premium rates was executed by plaintiff and defendant. The agent was described as "Gerald B. Dietz." Defendant agreed to pay statements of account on or before the fifteenth day of each month following receipt of the statement from plaintiff.

By October 1971 the agent was indebted to plaintiff in the amount of $32,808 for unpaid premiums.

■ The primary question is whether the defendant individually or the corporation, Select Insurance Plans, Inc., is liable to plaintiff for the unpaid premiums.

As this is an action at law, if there is any substantial evidence to support the trial court's findings that the obligation on the unpaid premiums belonged to defendant, we must affirm.

It is not necessary to set forth the testimony in detail. There was evidence that some statements for payment of premiums sent by plaintiff to defendant designated the corporation, Select Insurance Plans, Inc., as the debtor and were mailed to the corporate address and paid by check from the corporation. On the other hand, there was evidence that plaintiff refused defendant's request that the 1970 contract be between plaintiff and defendant's corporation, that plaintiff was concerned about defendant's financial condition, and that the mailing of statements to the corporation was due to inadvertence by plaintiff's accounting department. It is important to note that

the license issued by the state authorizing the defendant to sell credit insurance was issued to the defendant individually. Moreover, under the statute, ORS 744.115, a corporation is not eligible to secure a license to sell credit insurance. If we accepted defendant's contention that the agency contract was between his corporation and plaintiff, we would be approving the sale of insurance in violation of the statute.

There was substantial evidence to support the trial court's findings that the defendant, not his corporation, is indebted to plaintiff.

■ We have considered defendant's other assignments of error, including the contentions that the plaintiff's complaint did not state a cause of action and that the court should have sustained his defense of estoppel. They are without merit. The complaint was clearly sufficient to apprise the defendant of what he must meet both as to the pleadings and the evidence. *Lyden v. Goldberg*, 260 Or 301, 490 P2d 181 (1971); *Perkins v. Standard Oil Co.*, 235 Or 7, 383 P2d 107, 383 P2d 1002 (1963). In regard to estoppel the defendant apparently contends that plaintiff led him to believe that he would not be personally liable for the premiums. We have already concluded that the evidence supports the trial court's findings that the obligation to plaintiff belonged to defendant, not his corporation, and the defense of estoppel is not supported by the evidence.

We turn now to plaintiff's cross-appeal. The plaintiff sought recovery of interest on the payments due under its agency agreement from the dates due until the time of the trial at the rate of 6 per cent as allowed by ORS 82.010. The trial court first allowed plaintiff interest in the amount requested, $2,540.62,

but later decided that plaintiff was not entitled to recover pre-judgment interest. The trial court concluded that the account was an "open account" and therefore not subject to interest under ORS 82.010, which states, in pertinent part:

"82.010 Legal rate of interest. (1) The legal rate of interest is six percent per annum and is payable on:

"(a) All moneys after they become due; but open accounts bear interest from the date of the last item thereof.

"* * * * *

"(c) Money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent."

A brief statement of the procedure involved in selling the insurance and in collecting and refunding the premiums is necessary to understand the relationship between plaintiff and defendant.

The defendant, as plaintiff's agent, would contact a "dealer agent" which was usually a car dealer or an employee of a car dealer. The dealer would sell the credit insurance to one purchasing a car on credit, insuring the unpaid balance in case of death, illness, or injury of the purchaser. The dealer, the defendant as plaintiff's agent, and plaintiff as the insurer each received a portion of the premium. Apparently the car dealer first deducted his share of the premium, then sent the balance to defendant who deducted his share of the premium and forwarded the balance on to plaintiff. If the car buyer pays off the contract prior to expiration of the term of the insurance coverage, or if the car is repossessed, the purchaser is entitled to a refund of a portion of the premium. All the parties—the auto dealer, the defendant as the agent,

and the plaintiff as the insurer—are obligated to contribute a pro rata share of the refund to the purchaser of the auto.

By defendant selling insurance through his agents, the car dealers, there was a flow of premiums from the defendant to the plaintiff. There was also a flow of refunds from plaintiff through defendant to the car purchaser when cancellations were involved. Pursuant to the agency agreement, each month the plaintiff submitted statements of account to defendant who agreed to pay the statement on or before the fifteenth day of the succeeding month. The statements would show the amount of premiums received by defendant, the commissions allowed defendant, and the amounts received by defendant from plaintiff and returnable to the insured as refunds on cancelled insurance. In no event would plaintiff be indebted to defendant.

The trial court found that the account between plaintiff and defendant was an "open account" under the statute, and therefore plaintiff was not entitled to interest on the amount owed prior to the entry of the judgment.[1]

■ However, it is not necessary for us to decide whether the account was an open account because we believe that plaintiff is entitled to interest on the prin-

---

[1] An open account was defined in Purvis v. Kroner, 18 Or 414, 23 P 260 (1890) as follows:

"An open account is one in which some item of the contract is not settled by the parties, whether the account consist of one item or many; or where there have been running or current dealings between the parties and the account is kept open with the expectation of further dealings." 18 Or at 416.

An open account is also defined in Annot., 1 ALR 1060, Limitations, as "one which has not been closed, settled, or stated, but in which the inclusion of further dealings between the parties is contemplated."

cipal under subsection (c) of ORS 82.010 (1) as "money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent."

The agency agreement required the defendant to make settlement in full to plaintiff on or before the fifteenth day of the succeeding month following receipt of the statement of account. The statement of account totalled $32,808.49 as of October 21, 1971, and represented the net balance owed to plaintiff by defendant for premiums received. The defendant offered no testimony refuting the accuracy of the statements.

When the car dealer collected premiums and forwarded them to defendant, whose duty was to deliver the premiums—less his commission—to plaintiff, the premiums had been received by defendant "to the use of another" within the meaning of the statute.

"If A pays money to B to be given to C, the money has been received by B to the use of C. From the moment of the payment to B the money belongs to C and not to B, for it was in fact received for the use of C and at no time is B the owner of the money. Interest can be allowed only when two elements combine: (1) The money must be received to the use of another; and (2) it must be retained beyond a reasonable time without the owner's consent. * * *" *Holtz v. Olds*, 84 Or 567 at 581, 164 P 583, 164 P 1184 (1917).

We conclude that under the arrangement between plaintiff and defendant, defendant was receiving money for the use of another. As the defendant agreed to transmit the premiums on or before the fifteenth of the succeeding month we presume that to be a reasonable time.

Modified and remanded with directions to amend the judgment to include the additional amount of $2,540.62 interest.