Submitted on briefs April 5, reversed with instructions May 27, petition for rehearing denied June 29, 1976

BURKLUND et al, *Appellants,*

*v.*

CLAYTON et al, *Respondents-Cross-appellants.*

549 P2d 1261

R. Ladd Lonnquist, and Pozzi, Wilson & Atchison, Portland, for appellants.

Gordon M. MacLaren of Mercer, MacLaren, Talney & Crew, Portland, and Graham Walker, Portland, for respondents-cross-appellants.

BRYSON, J.

**BRYSON, J.**

This is an action to recover the value of certain real property situated in Clackamas County. The jury returned a verdict in favor of the plaintiffs for $5,500 and judgment was entered accordingly. On defendants' motion, the trial court set aside the judgment and entered judgment in favor of the defendants notwithstanding the verdict. Plaintiffs appeal and defendants cross-appeal.

Plaintiffs' complaint alleged:

"I

"On or about June 20, 1973, plaintiffs transferred by deed real property located in Clackamas County, State of Oregon, reasonably worth the sum of $5,500 to the defendants.

"II

"Said defendants impliedly promised to pay the sum of $5,500 to the plaintiffs in payment for said real property and would be unjustly enriched if said sum was not paid to the plaintiffs.

"III

"Despite demand, the defendants have neglected and refused to pay the plaintiffs the sum of $5,500 or to convey said real property back to the plaintiffs."

The defendants filed a general denial to the complaint.

The trial court allowed the defendants' motion for judgment n.o.v. on the following grounds:

"(1) The pleadings do not state a cause of action;
"(2)(a) There was insufficient evidence to go to the jury on the issue of substantial breach;
"(2)(b) There was insufficient evidence to go to the jury on the issue of unjust enrichment."

Plaintiffs first assign as error the trial court's order allowing defendants' demurrer to the amended complaint. The defendants filed the demurrer to the complaint during trial and after the first witness had been called to testify. The trial court, at that time, over-

ruled the demurrer even though he found the pleadings to be "inartful." After the jury returned its verdict the demurrer was allowed.

Under these circumstances we are committed to a liberal construction of the pleadings and the complaint is entitled to every reasonable intendment. *Widner Electric v. Lee,* 272 Or 445, 537 P2d 527, 529 (1975). *See Fulton Ins. v. White Motor Corp.,* 261 Or 206, 214, 493 P2d 138 (1972). We have held that pleadings are not fatally defective merely because they are not artfully drawn. *Parker v. Faust,* 222 Or 526, 532, 353 P2d 550 (1960). The complaint was sufficient to apprise the defendants of what they must meet both as to the pleadings and the evidence. *Investors Ins. Corp. v. Dietz,* 264 Or 164, 167, 504 P2d 742 (1972).

Plaintiffs also assign as error the trial court's order which found that there was insufficient evidence to go to the jury "on the issue of substantial breach" and on the issue of "unjust enrichment."

The evidence in this case discloses that the defendants were real estate developers and builders of residential homes. The plaintiff Norbert Burklund installed septic tanks, drainage fields and ditches and, as a subcontractor, had performed services for the defendants. Plaintiffs asked defendants to build a house for them on a lot which plaintiffs owned. Defendants orally agreed to build the house for a "flat fee" of $4,000 over the construction cost. To finance the building costs, the parties orally agreed that plaintiffs would convey title to their land to defendants. Defendants, as record owners, would obtain a construction loan in the amount of $32,700 from Far West Federal Savings and Loan Association (Far West).[1] Upon completion of the house, defendants were to convey title to the property back to the plaintiffs, who were to assume defendants' obligation to Far West.

---

[1] According to plaintiffs, defendants "could take out a loan a lot faster than an individual could."

Plaintiffs took possession of the house in the fall of 1973 and made the November and December, 1973, and January, 1974, monthly payments to Far West. There is substantial evidence that the dwelling was poorly constructed and that it had material defects which made the same uninhabitable. The most basic defect was that the house "didn't have any heat." The house was constructed with heating ducts under a concrete slab which formed the floor. These ducts would fill with water and obstruct the flow of warm air through the ducts to the respective rooms. Plaintiffs testified that defendants "couldn't get the house finished" and they moved out and returned the house keys to defendants in March, 1974. In April, 1974, defendants sold the property to William Schrammen, who was in possession of the premises at the time of trial. Schrammen reimbursed defendants for the February and March payments which defendants had made to Far West. Schrammen also assumed defendants' obligation to Far West on the construction loan and brought the payments to date.

Schrammen was called as a witness by both parties. Schrammen testified to numerous defects in the construction of the dwelling, and it was necessary for his family to move out of the premises during cold weather because the "furnace wasn't working." He testified:

"A   I can't give you an exact date, but it was during the snow, and the melting and the rain, and the vents did fill up completely."

Due to the type of construction, it would require major changes to effect a proper heating system and correct the numerous construction defects in the house from the roof to the foundation.

After plaintiffs vacated the premises, defendants treated the property as their own and sold the same to Schrammen. There is evidence that the lot which plaintiffs deeded to defendants was a "2-acre tract" valued at $6,000 to $6,500 at the time of conveyance.

[ 119 ]

Under the theory of unjust enrichment, the measure of plaintiffs' recovery is "the reasonable value of the property received" by the defendants. *Hughes v. Bembry,* 256 Or 172, 176, 470 P2d 151 (1970).

■ We believe there is sufficient evidence to support the jury's verdict.

The defendants cross-appeal, contending that plaintiffs' "appeal should be dismissed or alternatively, the case should be remanded for new trial with appropriate instructions." Defendants first contend that the court erred in failing to sustain defendants' demurrer in the first instance. We have previously disposed of this issue.

■ Defendants next contend, "The trial court erred once the deed was in evidence in failing to sustain defendants' objections to further testimony concerning the deed, its execution or any other agreement it was allegedly based upon." The objection was as follows:

"At this time the defendant will object to further testimony concerning this Deed; the document speaks for itself. And the execution, and the reason for it, and any other agreement that he might be leading up to I object to for the reason that as a matter of law, and based upon the Memorandum that I have served on counsel and given to the Court, no further testimony is admissible under the state of this pleading. * * *"

The deed states the consideration as follows:

"The true and actual consideration paid for this transfer, stated in terms of dollars, is $5,500.00. However, the actual consideration consists of or includes other property or value given or promised which is ~~part of the~~ consideration (indicate which)."
the whole

This is a Stevens-Ness Law Pub. Co. deed form. Whoever prepared the deed either failed to strike that portion of the form following the language, "$5,500" or specifically intended not to strike the language in the form. As such, the language in the deed is not clear, and we see no error in allowing plaintiffs to explain the consideration for the deed or what it was based on.

■ Defendants also contend that "[t]he trial court erred in failing to give defendants' requested non-uniform instruction No. 3." The instruction requested was as follows:

"I instruct you that defendants are not responsible for the negligence or poor workmanship of either of the plaintiffs or of any subcontractor where said subcontractor was the choice of plaintiffs and not defendants."

Defendant Clayton testified:

"Q   * * * Mr. Clayton, you admit, do you not, that you and your partner were the general contractor on the job?

"A   Uh-huh, correct.

"Q   That in that capacity, you were responsible for supervising the subcontractors that the contractors normally hire to do various parts of the work?

"A   Yes, anybody that we hired, we would do that with.

"Q   And I think it is your statement that Mr. Burklund was doing some of the work, the work he would normally do, the backhoe work. Correct?

"A   Uh-huh.

"Q   So in that respect, he was no different than any other sub doing backhoe work, was he?

"A   No, he would typically — any subcontractor we have by law has a year that they are responsible to us for the work, and we in turn are responsible to the purchaser for a year also.

"Q   Well, beyond that, isn't it true that Mr. Burklund looked to you as the general contractor for direction, supervision?

"A   I would assume that would be true, outside of his own expertise, which is digging, drain tiles, and rain drains, and like that."

We conclude the court did not err in refusing to give the requested instruction. Clayton's testimony precluded the court from so instructing the jury. For the above reasons, we see no reason to grant a new trial.

Reversed with instructions to reinstate the judgment based on the jury's verdict.